THOMAS B. HOWARD v. LETTIE MARSHALL ET AL.

1. FAMILY HOMESTEAD—CONSTITUTION.—It was the intention of the framers of the Constitution of 1869 to protect, in its homestead rights, a family composed of husband, wife, and children, and not a family composed of persons neither related by blood nor connected by marriage.
2. HOMESTEAD—STATUTE CONSTRUED.—The "act defining the homestead and other property exempt from forced sale in this State" (Paschal's Dig., 6834, 6835) superseded all former laws on the subject of exemptions.
3. SAME—ONLY A FAMILY CAN HAVE HOMESTEAD.—Since said act, there can be no homestead, save to the family.
4. SAME.—Servants of a testator cannot take by devise a homestead as against creditors.
5. ADDITIONAL LEGISLATION suggested on subject of homestead and exemptions.

APPEAL from Fort Bend. Tried below before the Hon. L. Lindsay.

From the briefs of counsel and opinion, a full statement of the case appears.

*George Quinan*, for appellants.—The points in controversy on this appeal, are whether the appellees were constituent members of the family of B. G. Marshall to entitle them,

under the law, to reserve the homestead from administration and to the property therein, and whether, under the will of B. G. Marshall, all his property was subject to the payment of his debts.

The will of B. G. Marshall, written in 1867, contained a bequest of "all my property to my former true and faithful servants, Duncan Marshall and his wife, Lettie Marshall, during their lifetime, and at their death, but not until the death of both of them, to their grandchildren (naming them). Of course, my debts will have to be paid; but I hope to live long enough to pay every cent I now owe, an' at my death I hope to owe nothing."

The testimony establishes the facts that Marshall was a ~ingle man, and died insolvent.

The relation in which appellees stood towards him, was that of persons who had formerly been b's slaves, and were at his death living on his plantation, rnd, such of them as could work, cropping there on shares. The account and oath of Lettie Marshall prove that in January, 1871, she made a contract with Marshall to farm with him on shares for the year 1871; that she was to have a squad of eight or ten hands; that she was to receive for special services out of his half of the cotton one hand's share, and this she claimed and was paid by the administrator. In her testimony, Lettie says she was Marshall's confidential servant, and that he treated her like she was one of the family; that she lent him money, and worked for a share of the crop, &c. She lived in the same house with Marshall, who was a cripple, and she waited on him, &c.

This is as fair a statement of the appellee's case as the statement of facts will warrant.

The provisions of our laws bearing upon the case are the Constitution and the Probate law.

The Constitution says: "The homestead of a family shall not be subject to forced sale for debts; * * * nor shall the owner, if a married man, be at liberty to alienate the

same, unless by the consent of the wife, and in such manner as may be prescribed by law."

The Probate law (section 26) says: "The property reserved from forced sale by the Constitution and laws of this State, or its value, if there be no such property, does not form any part of the estate of a deceased person, where a constituent of the family survives."

Section 125 provides: "Where the husband dies, the wife surviving, or a parent dies, leaving a child or children under twenty-one years of age, and unmarried, or a daughter unmarried of any age, if the provisions for one year exempted by law be not found in kind among the property left by the deceased, an equivalent thereto in money shall, on return of the inventory and appraisement, be ordered by the court to be paid to such survivor or survivors, as a claim of the class, provided such survivor or survivors have not sufficient means for their support."

I submit that, under the facts proven, and the law, the appellees were not constituents of the family of B. G. Marshall, surviving him.

No case is reported similar in its circumstances to the present. The decisions upon the subject of what constitutes a family, all turn upon the existence of wife and children surviving, or, where the head of the family exists, whether he can save a homestead right because of the existence of a family composed of other persons.

Family is defined to be all who are in the power of a *paterfamilias*, as his children and slaves. (Wharton's Dict.)

In a limited sense, the father, mother, and children. (Bouvier's Dict.)

The term family primarily means children, as regards bequests. (O'Hara on Construction of Wills, 317.)

In the construction of wills, it is synonymous with children or relations. (Bouvier's Dict.)

Now, the appellees were not in the power of B. J. Marshall. He had no authority over them. They had no claim

for support upon him, and they were not his children, nor related to him in any degree.   However they might be said to compose a part of his family during his lifetime, admitting them to be his servants, they certainly could not be such when his death rendered servants unnecessary.   During his lifetime they had no interest in Marshall's homestead, and at his death his homestead, as such, ceased to exist.   He abandoned it for another home, and acquired, let us hope, a better one.

The construction which was placed upon the law by Judge Lindsay would make the provision of the statute read: "The homestead of Ben. Marshall does not form any part of his estate when any servant of his lived after him."

I submit that this reading exposes the fallacy of his position. What good could result to the servant therefrom ?   Could he claim the homestead, or demand of the administrator the value of a homestead ?

The statement of this proposition shows, I think, without further argument, the erroneous character of the judge's charge and the judgment.

*P. E. Pearson,* for appellee.—B. G. Marshall was a planter in Fort Bend county, Texas, owning a large number of slaves, living himself on his plantation, having neither wife, children, nor kindred in the State.   He was a cripple, and the last years of his life a helpless invalid.   For thirty years, bond and free, the appellee, Lettie Marshall, a negress, lived under his roof, with her children and grandchildren, as his housekeeper, nurse, and general domestic manager, filling all of the duties and relations to him of mother, sister, and daughter. She and her younger kindred were the only family Marshall ever had in Texas.   By his will, he left all his estate to her, with remainder to her grandchildren.   There was a codicil which specially left her his homestead, which he had reserved from the mortgage given to the appellant, which codicil, as is explained in appellee's last plea, filed June, 1874, was

not passed upon by the court. The estate proving insolvent, appellee claimed the homestead as a surviving constituent of Ben. Marshall's family. ( 2 Paschal's Dig., sec. 5487; Probate law of 1870, sec. 26, p. 144.) Upon the trial before a jury, a verdict was found in her favor; and as there was certainly some evidence to sustain this verdict, this court will not reverse the case because there may appear to be a preponderance in favor of the opposite view. The only question, then, which needs discussion, is whether or not the charge of the court was correct. The charge embraces these propositions:

1. If a constituent of the family survives, being either heir at law or devisee under a will, the homestead does not pass to creditors. (2 Paschal's Dig., sec. 5487; Laws of 1870, p. 144, sec. 26; 20 Tex., 254; 26 Tex., 551; 27 Tex., 129; 7 Tex., 21.)

2. A man's family may consist of persons who are not of kin to him, as wards and domestics, and the like. A single man may have a family. (17 Tex., 76; 7 Tex., 21; 31 Tex., 680; Const., art. 12, sec. 15; 1 Bouv. Dict., p. 550, title FAMILY; Ulp. Dig., 16, 50, 195; 37 Tex., 50.)

3. A man may alienate his homestead, regardless of his creditors. He may alienate it by deed or by will, because it takes nothing from the creditors. (20 Tex., 254; 26 Tex., 551; 27 Tex., 129; 7 Tex., 21.) Alienation may be by will as well as by deed. (1 Blackst. Comm., 287, 384.)

The will supplies the place of inheritable blood. It is respectfully submitted that the charges were all correct.

GOULD, ASSOCIATE JUSTICE.—B. G. Marshall, being a cripple and a single man, never married, lived on his plantation, in Fort Bend county, having with him no relatives or connections, and having no family, unless Duncan Marshall and wife Lettie, his former slaves, who, with their children and grandchildren, lived with him in the same house, managed his domestic affairs, and ministered to his infirmities, having

his confidence and friendship as faithful servants, constituted such family. In 1871, B. G. Marshall died, leaving a will, the material part of which is as follows: "I give all of my property to my former true and faithful servants, Duncan Marshall and his wife, Lettie Marshall, during their lifetime, and at their death, but not until the death of both of them, to their grandchildren, Henry Marshall and Benjamin Green Marshall, the children of their daughter Ann Marshall, and Robert Willis and Fredonia Willis, the children of their daughter Lucy Willis. I would like my plantation to be carried on, that my former servants might have a home so long as they deported themselves correctly and made good hands. Of course, my debts will have to [be] paid; but I hope to live long enough to pay every cent I owe, and at my death I hope to owe nothing." The will was written in 1867, several years before his death, and in the interim Duncan Marshall had died. B. G. Marshall died largely indebted, and the will having been probated, T. B. Howard, one of his creditors, was appointed administrator of the estate, with the will annexed. The appellee, Lettie Marshall, alleging that she was the principal devisee under the will, and a constituent member of the family, moved the court to set aside to her all such property as was exempted from execution or forced sale by the Constitution and laws of the State. This application, in which she was afterwards joined by her grandchildren, was resisted by the administrator, who denied that they were constituents of the family.

The issue thus made was submitted to a jury, who were charged by the court, that if B. G. Marshall had a family at the time of his death, composed of domestics or servants, who were "recognized, considered, treated, and regarded by him as his family," living in the same house, under the same roof, until he died, and they were left by him, when he died, in said house as surviving members of his family, the Constitution exempted the homestead of 200 acres, "so long as such surviving family may continue to occupy it as a homestead."

The charge further instructed the jury, that "the plaintiffs, if Benjamin G. Marshall had died without a will, could not have taken the property by inheritance from him, notwithstanding they were the surviving members of his family at the time of his death, and so recognized, treated, and regarded by him"; but that in such case his property, including the homestead, would have vested in his heirs at law, and if these heirs were not members of his family at his death, the property would so vest subject to administration and the payment of his debts.   The charge proceeds: "But if it was the homestead of Benjamin G. Marshall in his lifetime, by reason of his having a family, he could have sold and disposed of such homestead either by deed or by will, provided he had no wife living and surviving him at the time of his death, and such deed or will would vest the title absolutely in the grantees under the deed, or in the devisees under the will, and in such case a homestead is freed from all liability to the debts of the creditors by the Constitution and laws of the State."

Under this charge, there was a verdict for the plaintiffs, and judgment setting aside to them the homestead of 200 acres, from which judgment Howard, the administrator, appealed.

In our opinion, the record fails to show that B. G. Marshall ever had a family, within the meaning of the Constitution, so as to give him a homestead.

The nature of the family intended is left undefined by the Constitution; but we are of opinion that the framers of that instrument had in view a family composed of husband, wife, and children, for whose protection, in the enjoyment of their homestead, they intended to provide.

Whether the word, as used in the Constitution, may include other relatives or connections, it is not necessary in this case to decide; but we hold that the Constitution did not contemplate a family composed of persons neither related by blood nor connected by marriage.   The object of the Constitution has been the subject of frequent comment and com-

mendation in this court, as being mainly to secure to the husband, wife, and children an asylum beyond the reach of the creditor. (Trawick v. Harris, 8 Tex., 314; James v. Thompson, 14 Tex., 466; Wood v. Wheeler, 7 Tex., 22; Green v. Crow, 17 Tex., 185; Franklin v. Coffee, 18 Tex., 415; Hubbard v. Horne, 24 Tex., 272.)

The Probate laws of 1846 and 1848 each contained provisions securing the homestead to the widow and children, but not to others. Speaking of that provision in the law of 1848, Chief Justice Wheeler says that "its object seems to have been to carry out and effectuate the beneficent object of those general laws, excepting the homestead and certain other enumerated property from forced sale." (Hubbard v. Horne, 24 Tex., 272.) These enactments are indicative of the legislative construction of the Constitution. The Probate law of 1870, which was in force at the date of Marshall's death, contains the following provision: "The property reserved from forced sale by the Constitution and laws of this State, or its value, if there be no such property, does not form any part of the estate of a deceased person, when a constituent of the family survives." (Paschal's Dig., art. 5487.) In a subsequent section of this law, provision is made similar to that in former Probate laws, securing the exemption of one year's provisions to the surviving widow and minor children or unmarried daughter; and it seems clear that it was not the design of this statute to change the constituents of the family, or to secure benefits to those not related to the deceased.

We know of no decision of this court which supports the view that an unmarried man and his servants or employés constitute a family entitled to a homestead under the Constitution. In the case of Wilson v. Cochran, Justice Lindsay expresses his opinion, that the term family was used in the Constitution "in its generic sense, embracing a household, composed of parents and children, or other relatives, or domestics and servants; in short, every collective body of persons living together within the same curtilage, subsisting in

common, directing their attention to a common object—the promotion of their mutual interest and social happiness." (31 Tex., 680.)   The party claiming the exemption in that case was a single man, without wife or children, "nor had he at any time domestics or servants on the premises," and the decision was, that as he had no family living upon the prem-ises at any time, he could not claim a homestead.   Very evi-dently, the definition given of a family was not necessary to the disposition of the cause, and should not be regarded as supported by an authoritative decision.

In Taylor *v.* Boulware, 17 Tex., 77, Justice Lipscomb, speaking of the surviving husband, says: "The death of the wife whilst it was his homestead, and his having no chil-dren, did not destroy its distinctive character of a homestead, he continuing to reside there with his slaves, hirelings, and niece, and her husband, Mr. McAlister.   If he had been without servants, or any one with him, after the death of his wife, it would still have been his homestead so long as it continued to be his residence, and protected from a forced sale."   The decision seems to be based on the latter ground; but at all events there was a niece, and the case is no author-ity for holding a homestead to be secured to a single man, never married, who has no relatives or connections living with him.

It does not appear to have been claimed that Marshall had a homestead as a single man, unless he and his servants constituted a family; and whatever may have been the law prior to or under the exemption of 1866, it is clear, that under the exemption statute in force at the time of his death there was no homestead exemption save that to the family.   In Cobbs *v.* Coleman, 14 Tex., 594, the opinion was expressed that the homestead exemption of fifty acres contained in the act of 1839 (Paschal's Dig., art. 3798) applied to single men, and was not repealed by the Constitution of 1845.   In the subsequent case of Philleo *v.* Smalley, 23 Tex., 502, the court say: "It will be worthy of consideration, whenever the

question is distinctly presented to this court, whether or not the execution law of 1839 is repealed by the provisions of the Constitution, so far as it exempts homesteads from forced sale." In 1866, however, a different exemption law was enacted, under which the case of Wilson *v.* Cochran, *supra,* was decided, substantially holding that a single man, without a family, had no homestead. (Paschal's Dig., art. 3798*a.*) In 1870, the statute as to exemptions was again changed, by an act entitled "An act defining the homestead and other property exempt from forced sale in this State." The first section simply reënacts the constitutional provision as to homesteads, in the same language. The second section regulates the other property reserved to any family exempt from forced sale, and winds up by exempting to any citizen not a head of a family certain personal property. The third section repeals all laws and parts of laws contravening the provisions of that act. There can be no question that this act superseded all former laws on the subject of exemptions, and that under it there is no homestead exemption save to the family.

Our conclusion is, that the record does not show that B. G. Marshall ever had a homestead. It does not, then, become necessary for us to consider whether there is any foundation for the distinction taken by counsel for appellant, between the family entitled to an exemption under the Constitution, and the family having an interest in the homestead after the death of the head. If B. G. Marshall had no homestead at his death, it is useless to consider whether there was a surviving constituent of his family entitled thereto; or whether he had power to dispose of a homestead by will, so as to defeat the claims of creditors; or yet whether the proper construction of his will was that he designed to make such a disposition thereof. To meet the possibility that other facts may be developed showing that Marshall in fact had a family and a homestead, a possibility which we would scarcely entertain, were it not for the fact, that the able counsel for appellant, both on the trial below and in this court, seemed

to concede that there was such a family, we will say, that were it necessary for the disposition of the case, we should decide each of those propositions, or questions, in the negative. I will remark for myself, in closing this opinion, that the indefiniteness of the Constitution, on the subject of the homestead, might well be supplied by further legislation.

The reason of the homestead exemption may extend to cases of a single man supporting his aged parents, or his helpless relatives less nearly related to him, or to other cases which may be imagined. Well-considered legislation on the subjects of the homestead and community property, more fully defining the rights of parties, is, in my opinion, and I am authorized to add in the opinion of the court, most urgently called for.

The judgment is reversed and the cause remanded.

Reversed and remanded.