*Writ of error dismissed.*

Delivered September 19, 1894.

---

F. M. Mullins v. Thomas Looke et al. ·<br>No. 1303.

1. **Pleading and Practice—Special Exception Required.**—Where there is no special exception, and the objection is first made when evidence is offered, allegations in the petition that a lot was the homestead of W. at the time plaintiff purchased it, August 1, 1892, and that the defendant's execution was issued and levied thereon July 21, 1892, and that by said levy defendant attempted to fasten a lien upon said homestead of W., and that said execution in so far as it attempts to create a lien on said homestead is null and void, will be held to sufficiently allege that the lot was the homestead of. W. at the date of the levy, as well as of plaintiff's purchase.

2. **Homestead—Intention—Occupancy.**—A city lot in the possession of a tenant was purchased, but the buyer's intention to make it a homestead was not disclosed, nor was the purchase then followed by actual residence of the family thereon. The evidence did not disclose that the purchaser was then without another home. *Held,* that this was insufficient to establish its homestead character at that time, although the purchaser afterwards moved upon it.

3. **Homestead—Family—Adopted Child.**—A single man and a child living with him whom he has taken to raise, but whom he is under no legal or moral obligation to support, do not constitute a family within the meaning of the homestead law.

Appeal from Tarrant. Tried below before Hon. R. E. Beckham.

*Carlock & Powell,* for appellant.—1. The court erred in not permitting plaintiff to file a trial amendment to his pleadings, and in not permitting plaintiff to withdraw his announcement of ready for trial, on the ground of surprise.

2.   When one who is the head of a family purchases improved property for a homestead, which said property is at the time of the purchase subject to an unexpired lease, and the purchaser, acting in good faith and within a reasonable time afterwards, takes possession of the property as soon as the lease expires, and thereafter occupies the same for his home, the property becomes invested with the character of a homestead from the date of such purchase.   Gardner v. Douglass, 64 Texas, 78; Barnes v. White, 53 Texas, 631; Edwards v. Fay, 9 Kan., 417–425; Hanlon v. Pollard, 17 Neb., 369; Finnegan v. Prindeville, 83 Mo., 517; Crawford v. Richerson, 101 Ill., 357; Thomp. on Homesteads, sec. 247, et seq.

3.   A surviving husband without children of his own, who has adopted and taken to raise an orphan boy, is the head of a family within the meaning of the Texas homestead law.   Wolfe v. Buckley, 52 Texas, 649; Vidal v. Commagere, 13 La. Ann., 649; Schoul. on Dom. Rels., sec. 232; Lane v. Phillips, 69 Texas, 240; Roco v. Green, 50 Texas, 489; Bouvier's definition of "Adoption."

*J. C. Randolph,* for appellees.—1.   The court did not err in refusing to allow appellant to file a trial amendment alleging that the property in question was exempt at the date of levy, or in declining to permit him to withdraw his announcement of ready for trial, on the ground of surprise, his request having been made after the court decided the case.

2.   Where a family is composed of a husband and wife, and they purchase land with the intention of making the same their homestead, but before that intention is carried into execution the wife dies, the same does not become the homestead of the husband, even though, as soon after his wife's death as he can obtain possession thereof, he takes possession and uses the property as his residence.

To constitute a person the "head" and another a member of a family in the meaning of the Constitution and laws of Texas, it must appear that there is some legal or moral obligation on the part of the "head" to support the other member, and a corresponding state of dependence on the part of such other member for his support.

HEAD, ASSOCIATE JUSTICE.—On January 13, 1890, B. C. Wells purchased a lot in the city of Fort Worth, upon which was a residence, and which at that time was occupied by a tenant under a lease which did not expire until March, 1891.   At the time of this purchase Wells had a wife, but no children.   There was, however, living with him an orphan boy named Claude Walker, whom he had taken to raise upon the death of his parents sometime previously, the exact date not given.   On the 26th of October thereafter Mrs. Wells died, never having lived upon the lot purchased as aforesaid.   The record is silent as to whether or not Mr. and Mrs. Wells owned another place during the time that elapsed between the date of the above purchase and her death.

Upon the expiration of the lease above referred to, in March, 1891, Wells, with the Walker boy, moved into the house purchased as aforesaid, and continued to reside therein as his home continuously until he sold it to appellant, as hereinafter set forth.

In May, 1891, judgment was rendered in favor of appellee Looke against Wells for something over $600, and on July 16, 1892, an execution issued thereon was levied upon said lot. On the 1st of August, 1892, Wells, for value, conveyed this lot to appellant, who instituted this suit to enjoin the sale under the above levy, upon the ground that the property was the homestead of Wells, and therefore not subject to execution.

As to whether or not the place was in fact the homestead of Wells, must be decided entirely upon his testimony, which was in substance as follows:

"On the 1st day of August, 1892, I sold to Mullins my homestead. It is a corner lot on Thirteenth and Lamar streets. It has a house and other improvements on it. I bought said property of James Harrison, January 13, 1890. At the time of the purchase it was under a lease to James McCarthy of the City National Bank. I bought it subject to this lease, at the expiration of which I was to take possession. I took possession sometime in the latter part of March, 1891, and remained in possession until I sold it to Mullins, August 1, 1892; consequently I remained in possession for about sixteen months prior to selling it to Mullins. I occupied the house with a Mr. Davis, afterwards with Mr. McConnell, and after that with Mrs. Chollar, a housekeeper. They were all housekeepers, and paid no rent. My family consisted of myself and an orphan boy whom I had taken to raise at the death of his parents. I had no children of my own. Said property was my homestead at the time I sold the same to plaintiff, and had been my homestead for about sixteen months previously. I claimed said property as my homestead in both May, 1891, and May, 1892. I claimed said property as my homestead at the time Thomas Looke obtained the judgment against me. I purchased said property, as I have before stated, about January 13, 1890, and purchased it for a homestead. My family at the time I purchased said land consisted of myself, my wife, and the orphan boy before referred to. I could not take possession of said property immediately after my purchase because of the lease of the same which I have before referred to, but after that time I could and did take possession of it. I never abandoned the same, but occupied it continuously for sixteen months, and up to the time I sold the same to Mullins. During the time I owned said property I did not purchase any other property with the intention of making the new purchase my homestead."

Answers to cross-interrogatories: "I have no homestead in California. I have a proposition from a party to sell me a place in California, but have not yet accepted same. The proposition was not made until after I sold to Mullins.  *  *  *  It is not true that my family had come to

California before I sold to Mullins. I had no family except the boy before spoken of, and he accompanied me when I went to California, on the 6th day of August, after the sale to plaintiff. At the time of the sale to plaintiff the parties actually staying in the property were myself and boy, and the housekeeper, Mrs. Chollar. There was no relationship between us. One was simply my housekeeper, and the other was, as I have before stated, an adopted boy. My wife died on October 26, 1890. My family, at the time I sold to Mullins, consisted of myself and an orphan boy, Claude Walker, whom I took to raise. There was no relation by blood or marriage between us. I had not purchased another residence anywhere before I sold the premises in controversy to Mullins. I did not own one anywhere when I sold to Mullins."

The court below found against the homestead claim, but from a bill of exceptions contained in the record, we infer the decision was based upon the ground that appellant's petition was not sufficient to support a judgment in his favor, for want of an allegation that the property was the homestead of Wells at the date of the levy of the execution in favor of appellee thereon. This objection to the petition seems to have been made for the first time when evidence was offered by appellant to prove this fact. It can not therefore be fairly said that the judgment appealed from imports a finding in favor of appellee upon the evidence.

*Opinion.*—The first question presented for our decision by this record is, did or not the court below err in holding the petition of appellant insufficient to sustain a judgment based upon a finding that the property in controversy was the homestead of Wells at the date of the levy of the execution in favor of appellees?

The burden unquestionably was upon appellant, both to aver and prove the exemption of the property before appellees acquired their lien thereon. This is not controverted by appellant, but he contends for the sufficiency of his pleading as against an objection made to the introduction of evidence, and not called to his attention by an exception presented before the commencement of the trial upon the facts.

The rules applicable to an objection to pleading interposed as this one was are well illustrated in numerous decisions in this State, and require no extended discussion here. Where the objection is urged by special exception in proper time, the pleading complained of must be construed most strongly against the pleader; for then, if the alleged defect be found to exist, it can be seasonably remedied; but in cases in which the objection to the pleading is not disclosed until the evidence is offered, or the judgment is about to be rendered, it should be overruled, unless there be found to be a total absence of averment upon the point.

In this case the petition contains a distinct allegation that this lot was the homestead of Wells at the time of its purchase by appellant;

on the 1st day of August, 1892, and after stating the issuance and levy of the execution on the 21st day of July, 1892, contains the further general allegation, "that by the issuance and levy of said execution as aforesaid, defendants herein attempted to fasten a lien upon the homestead of B. C. Wells, and that said homestead was exempt under the laws of the State of Texas from forced sale, and that said execution, in so far as it attempts to create a lien on said homestead property, is null and void, and of no force or effect."

We think this can only be treated as a defective averment that the property was exempt at the date of the levy of the execution, and not as an entire absence of allegation, and that the court therefore erred in rendering judgment in favor of appellees upon the ground above stated.

The next question we are to decide is as to whether or not the lot in controversy had become the homestead of B. C. Wells previous to the death of his wife.

It seems that Wells purchased this property in January, 1890, at which time it was improved and occupied under a lease which did not expire until March, 1891. At the time of this purchase, Wells' wife was living, but died in October following. He also had living with him an orphan boy, Claude Walker, whose age is not given in the record, whom he had taken to raise upon the death of his parents, but it does not appear whether he had regularly adopted him as his heir, in compliance with our statute, or not.

The only evidence as to the designation of this property as a homestead is the testimony of Wells himself, copied in our conclusions of fact. It will be observed, that while this witness in one place says he made this purchase "for a homestead," he nowhere says this was known to any one but himself, it not even appearing that his wife was aware of his intention in this regard, or concurred therein during her life. The record is also silent as to whether or not the witness owned another place upon which he lived at the date of this purchase, or during the time that intervened before he took actual possession.

The court below found against the homestead right. The burden was upon appellant to establish the exemption. It has been repeatedly held, that while intention is the most important element in the designation of a homestead, it alone is not sufficient to fix this character upon a new place, but in order to secure the exemption, this intention must be followed with such acts of preparation for occupancy as to clearly evidence the intended use. This question is discussed at length, with a review of authorities, in Cameron v. Gebhard, 85 Texas, 610.

It is true these acts of preparation have been dispensed with where the head of a family who has no home purchases improved property already under lease, with the avowed intention of making it his place of residence, and with his family actually does this as soon as the lease expires (Gardner v. Douglas, 64 Texas, 78); but this does not apply where the purchaser already owns a place upon which he is living.

In such case there must be an abandonment of the old in order to the acquisition of a new homestead. Archibald v. Jacobs, 69 Texas, 248.

We are aware of no case in which it has been held that undisclosed intention alone is sufficient to fix the homestead character upon a new place, even though it be in the possession of a tenant, in the absence of evidence that the claimant was without another home. If Wells really owned a homestead where he lived during the life of his wife, it is clear, from the decision in Archibald v. Jacobs, that the homestead character did not attach to the lot in controversy during that time; and the burden being upon appellant, he should have shown affirmatively the necessary facts to sustain the exemption claimed.

We therefore conclude that the evidence is not sufficient to authorize us to hold that this place had become the homestead of Mr. Wells previous to the death of his wife, especially in view of the fact that this purchase was never followed by actual residence of the family thereon.

The next question is, did this lot become the homestead of Wells by reason of his moving on it after the death of his wife, and continuing to make his home there with Claude Walker, under the circumstances herein before set forth? We think not.

It is not by any means an easy task to define a "family," within the meaning of our Constitution creating this exemption, but we believe the best considered cases in this State, in the absence of a wife, require either a legal or moral obligation on the part of the one claiming the exemption to support the others for whom it is claimed. Roco v. Green, 50 Texas, 489; Lane v. Phillips, 69 Texas, 240; Howard v. Marshall, 48 Texas, 477; Whitehead v. Nichelson, 48 Texas, 517; Barry v. Hale, 2 Texas Civ. App., 668.

We believe it would not be safe for us, from the meager statements contained in this record, to conclude that Wells had adopted the boy referred to in compliance with the forms prescribed by our statute, and clearly there is no evidence that he had ever been apprenticed to him.

The case must therefore be treated as an ordinary one where a single man has a boy living with him, whom he has taken to raise through dictates of kindness or self-interest, but to whom he is under no obligation, either legal or moral. That this would not constitute a family within the meaning of our Constitution, we think clear from the decisions above cited.

We do not, however, decide that the case would have been different had a legal adoption of this boy in compliance with our statute been shown. As to this we make no decision; but see Wolfe v. Buckley, 52 Texas, 641; Eckford v. Knox, 67 Texas, 200; Taylor v. Deseve, 81 Texas, 246.

We conclude that appellant has not discharged the burden which devolved upon him of showing the exemption of this property, and that therefore the judgment of the court below should be affirmed.

*Affirmed.*

Delivered September 26, 1894.