**CITY OF CORSICANA et al. v. MILLS.**
**(No. 2381.)**

(Court of Civil Appeals of Texas. Texarkana. Nov. 8, 1921. Rehearing Denied Nov. 10, 1921.)

1. **Municipal corporations** ⬅️485(5)—Paving certificate prima facie evidence of compliance with antecedent prerequisite.

Under Rev. St. arts. 1011, 1012, and Corsicana City Charter, § 66, a paving certificate issued to a contractor, when introduced in evidence, constitutes prima facie evidence that all of the antecedent prerequisites have been complied with; and, unless the record contains sufficient evidence to impeach the correctness of recitals therein, a judgment should be entered in favor of city and contractor suing thereon.

2. **Municipal corporations** ⬅️455—"Hearing" on paving assessment held sufficient.

Where council of city of Corsicana met at special session for purpose of hearing owners of property abutting on street to be paved with reference to proposed assessments, and a quorum was present, and mayor stated the object of the meeting, and asked if there was any one present who wanted to be heard, and only two taxpayers appeared, and the mayor later again called for any who had any objection to make, there was a sufficient "hearing" within the meaning of Rev. St. art. 1013, and the city charter of Corsicana.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Hearing.]

3. **Municipal corporations** ⬅️455 — Taxpayer not appearing at hearing on assessment leaves matter of fixing assessment to city council.

It is contemplated by Rev. St. art. 1013, and a similar section in the city charter of Corsicana, that a taxpayer should be informed before hearing as to assessments for paving by some form of notice of a tentative sum which he will be required to pay, but where the taxpayer makes default, he leaves the matter of fixing the assessment to the judgment of the governing body of the municipality.

4. **Municipal corporations** ⬅️485(5)—Presumed that taxpayer had notice of hearing on paving assessment.

In an action on a paving certificate, wherein defendant claimed that there was no proper hearing on the assessments, it devolved upon the defendant to rebut the prima facie proof made by the recitals in the certificate that he had no notice, or an insufficient notice of the hearing.

5. **Eminent domain** ⬅️2(11)—Levying of assessments for paving street not taking of property for public use.

The paving of a street and levying of assessments to pay therefor is not the taking of private property for public use, and there is no merit in a contention that, being such taking, the governing body of a city has no authority to act as a judicial tribunal to hear complaints of landowners under city charter of Corsicana and Rev. St. arts. 1006–1017, and it was immaterial that in paving water was diverted onto the land of a taxpayer, which increased the normal damages caused by the natural flow of the water, a matter which city governing body did not undertake to adjudicate.

6. **Municipal corporations** ⬅️407(3) — No ground of complaint of double taxation by owner abutting on paved street.

An abutting owner cannot complain that city having expended, toward payment of one-fourth of expenses of paving street, money received from good roads district which was collected in part from such abutting owner, it constituted double taxation, and resulted in such landowner paying more than three-fourths of the cost of the paving, while the city charter and Rev. St. arts. 1006–1017, required the city to pay one-fourth of the cost of the paving; it appearing that the good roads tax was so distributed that it fell equally upon all residents of the city.

7. **Municipal corporations** ⬅️868(1)—Debt incurred for paving street not invalid in not making provision for payment.

A paving certificate was not invalid in that no provision was made for paying debt incur-

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

red in paving the street in violation of Const. art. 11, § 7, where the city had on hand ample funds to meet its one-fourth part of the cost of the paving, and paid its part during the current year, and the city made provision for paying the remainder of the indebtedness, within the meaning of such constitutional provision, by assessing the amount thereof against the abutting property owners.

**8. Municipal corporations ⬅═513(8)—No inquiry into question of benefits in action brought more than 20 days after hearing on assessments.**

Court erred in permitting an inquiry into questions of benefits to property of landowner in suit filed more than 20 days after date of hearing accorded to taxpayers on question of assessment for paving, under Rev. St. arts. 1011, 1012, and Corsicana City Charter, § 66.

**9. Eminent domain ⬅═271—Liability for flooding abutting premises not dependent on negligence.**

Liability of city for damages to property owner abutting on street for damages occasioned by increased flooding of the property by reason of the improvement of the street is not dependent upon negligence.

**10. Appeal and error ⬅═1066—Instructions as to negligence held harmless, in view of submission of cause on other theory.**

Error of the court in charging generally on "ordinary care," "negligence," "contributory negligence," in an action by a landowner against a city for damages for increased flooding of premises by reason of improvement of street, was harmless, where the court in submitting the concrete issues did not make liability depend on negligence.

**11. Eminent domain ⬅═307(3) — Instruction held not erroneous as exonerating city from liability for flooding land.**

An instruction concerning negligence of landowner in placing obstructions upon premises in an action by the landowner against city for increased flooding of premises by improvements in street held not open to the objection that it legally exonerated the city from liability if landowner was negligent, exonerating the city only in the event the jury found that plaintiff's putting of barricades and obstructions caused all of the damage.

**12. Appeal and error ⬅═1068(1)—Instruction as to liability held harmless in view of verdict.**

Any error of the court in charging that paving contractor was mere agent of city, and was not liable with the city for injury to adjacent property caused by increase in flow of water, was harmless, where the court in submitting the case made the city responsible for whatever the contractor did, and the verdict of the jury exonerated the city.

Appeal from District Court, Navarro County; H. B. Davis, Judge.

Suit by Chas. H. Mills against the City of Corsicana and others, and by such city, for the use and benefit of T. W. Worthington, against Chas. H. Mills, which suits were consolidated. Judgment in favor of defendants in both actions, and all the parties appeal. Judgment in first case affirmed, and judgment in second case reversed and rendered.

Callicutt & Johnson and Hawkins Scarborough, all of Corsicana, for plaintiff.

R. E. Prince and Richard Mays, both of Corsicana, for defendants.

HODGES, J. The record in this case contains two separate appeals, each from a distinct judgment rendered.

It appears from the evidence that in June, 1913, there was formed in Navarro county, for the purpose of improving certain highways, road district No. 1, which included within its limits the city of Corsicana. In June of that year bonds were issued by the district, amounting to $400,000. Of the money realized from the sale of those bonds $35,000 was delivered by the good roads commissioners to the city of Corsicana as its portion of the fund, and to be used by the city exclusively within its corporate limits upon such streets as it might determine to improve. In 1915 the city of Corsicana determined to pave a number of its streets, among them being a section of what is called "West Second avenue." It was also determined by the city that three-fourths of the cost of paving should be assessed against the abutting property owners. On April 18, 1915, the city entered into a written contract with T. J. Worthington to do the paving contemplated on West Second avenue, the material to consist of gravel overlaid with a species of asphalt. Worthington entered upon his contract, and the paving was completed and accepted by the city in December of the same year. The sum of $1,419.73 was assessed against the property of the appellee, Chas. H. Mills, who owned a lot or lots abutting on that street. It further appears that the water from West Second avenue had for many years been flowing into a small branch which ran through the Mills' property. The evidence shows that this branch was a natural water course, and furnished an outlet for a part, at least, of the water that fell in that vicinity. After the completion of the paving contract by Worthington a certificate was issued to him, which contains the following recitals:

"All proceedings with reference to making such improvements upon said street have been regularly done in compliance with the terms of the charter of the city of Corsicana, Texas, and all prerequisites to the fixing of the lien and the claim of personal liability evidenced by this certificate have been performed."

About the time this certificate was issued a controversy arose between Mills and the mayor of the city of Corsicana as to the suf-

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ficiency of the provisions made for disposing of the water which fell on West Second avenue. Mills claimed that in making the improvements more water was caused to flow into that branch, which increased the flooding of his property. No settlement having been reached between them, Mills gave notice that he would refuse payment of the amount assessed against him, and in June, 1916, filed a suit against the city of Corsicana and Worthington for damages which he claimed were occasioned by turning an increased flow of water upon his premises. He further set up that by reason of the work done on the street in front of his property a charge against him, amounting to the sum of $1,400, had been made, and a certificate issued, and asked that this be canceled. He later filed amended petitions which amplified the substance of the original pleading.

On December 20, 1916, the city of Corsicana, for the use and benefit of T. J. Worthington, filed a suit in the same court against Mills setting up, among other things, the improvements made by the city, the issuance of the certificate as the amount assessed against the property of Mills, and sought a recovery thereon for the benefit of Worthington, together with interest and $250 as attorney's fees. In June of 1919 the two cases were consolidated and tried as one. At the conclusion of the evidence the trial court instructed the jury to return a verdict in favor of Mills for the cancellation of the certificate in the suit against him by the city and Worthington, which was done and a judgment entered. The court submitted to the jury, upon appropriate instructions, the issue as to damages claimed by Mills as a result of an increased flow of water upon his premises. The court, however, instructed the jury to return a verdict in favor of Worthington upon the ground that he was not personally liable for any such damage. The jury returned a verdict in favor of both Worthington and the city of Corsicana. The city and Worthington have appealed from the judgment entered upon the peremptory instruction in favor of Mills, and Mills has appealed from the judgment rendered upon the verdict of the jury against him. We shall first consider that branch of the case embraced in the suit of the city of Corsicana and Worthington against Mills for recovery of the amount of the certificate, interest, and attorney's fees.

Since 1903 the city of Corsicana has been operating under a special charter. In 1913 certain amendments were adopted by which the city was authorized to improve its streets, the expense to be paid either wholly by the city, or partly by the city and partly by the abutting property owners. The amendments authorized the city to assess against property owners the entire expense of constructing sidewalks and curbs, and three-fourths of the expense of paving the streets. Some time before this litigation arose, and before the city entered upon this project of improving its streets, the provisions of chapter 11 of title 22 of the Revised Civil Statutes, relating to street improvements in towns, cities, and villages, were regularly adopted by the city of Corsicana. Many of the provisions of that chapter were embraced in an amended city charter, and an ordinance had been adopted putting those provisions into effect. Section 66 of the charter of Corsicana as amended by the acts of the Legislature in 1913 (Loc. & Sp. Laws 1913, c. 140) provides, in substance, that the city shall have the power to improve any street, avenue, alley, highway, public place, or square, or any portion thereof, within its limits, by filling, grading, raising, paving, or repairing the same in a permanent manner or by the construction or reconstruction of sidewalks, curbs, and gutters, or by widening, narrowing, or straightening the same or any part thereof, and to construct necessary appurtenances thereto, including storm sewers and drains; and the city council of Corsicana shall have the power to order such improvements, or any part thereof, and to select the materials and methods of such improvements, and to contract for their construction in the name of the city, and to provide for the payment of the cost of such improvements out of any available funds of the city, or by the issuance of bonds; and the cost of making such improvements may be wholly paid by the city, or partly by the city and partly by the owners of property abutting thereon, provided that in no event shall more than three-fourths of the cost of any improvement, except of sidewalks and curbs, be assessed against such property owners or their property; but the whole cost of construction of sidewalks and curbs in front of any property may be assessed against the owner thereof or his property. Section 68 provides for levying a special tax to pay for improvements, and authorizes an assessment against the property owner not to exceed three-fourths of the cost, and makes this amount a personal liability against the owner, subject, however, to the provision that no assessment shall exceed the benefits to such owner in the enhanced value of his property by reason of the improvements made. Section 69 provides for a rate of interest not to exceed 6 per cent. per annum upon deferred payments, and empowers the city to issue in its name "an assignable certificate against each owner declaring the liability of such owner and his abutting property for the payment of such assessment and may recite therein that all legal prerequisites necessary to fix said liability against such owners and a lien * * * have been complied with, and may prescribe and fix the terms and conditions of said certificate. Said certificate shall be admitted in evidence in all legal pro-

ceedings where relevant or material, without proof, and shall be prima facie proof of all facts recited therein."

It is further provided in this section that no lien for the payment of any such assessment shall be created against property exempt by law from sale under execution, but that the owner of such exempt property shall nevertheless be personally liable for the cost of such improvement constructed in front of his property, which may be assessed against him. Section 71 provides that no assessment of any part of the cost of such improvement shall be made against any property, or its owner, until a full and fair hearing shall first have been given to the owner of such property. preceded by a reasonable notice thereof to the owner. Such notice shall be by advertisement inserted at least three times in some newspaper published in the city. The city council may provide for other additional notice by advertisement. The hearing shall be before the city council, at which time such owner shall have the right to contest the assessment and personal liability and the regularity of the proceedings with reference to the improvement and the benefit resulting therefrom to his property, and any other matter with reference thereto. The city council in making improvements under the terms hereof shall provide for such hearings for the property owners and for giving notice, and shall be empowered to correct any mistake or irregularity with reference to such improvements or cost thereon against the abutting property owners, and in case of any error or invalidity to reassess against an abutting property owner and against abutting property and its owner the cost or part of the cost of such improvements, subject to the terms hereunder, not in excess of the benefits and enhanced value of such property, and to make provision for notice to and hearing of property owners before such assessment.

"Any property owner against whom or whose property any assessment or reassessment has been made shall have the right within twenty days thereafter to institute suit in any court having jurisdiction to set aside or correct the same or any proceeding with reference thereto on account of any error or invalidity thereof, but thereafter such owner, his heirs, assigns or successors, shall be barred forever from any such action and from making any defense of invalidity in such proceedings or assessments or reassessments in any action in which the same may be brought in question."

The above are substantially, if not literally, copies of the provisions of chapter 11 of title 22 of the Revised Civil Statutes, relating to improvements in cities, towns and villages.

[1] It will be seen both from the statute and the charter of Corsicana that the certificates sued upon in this instance when in-troduced constituted prima facie evidence that all of the antecedent prerequisites had been complied with. It follows, therefore, that unless the record contains sufficient evidence to impeach the correctness of those recitals, a judgment should have been entered in favor of the city and Worthington against Mills on the certificate. Rev. Civ. Stat. arts. 1011, 1012; Corsicana City Charter, § 66; Ft. Worth v. Capps, 205 S. W. 494, and cases cited. It appears from an instrument incorporated in the record, in which the trial court stated his legal conclusions, that he based the peremptory instruction in favor of Mills upon the following grounds: (1) At the time the city entered into the contract with Worthington for the street paving no provision was made as required by the Constitution for creating an interest and sinking fund for the payment of the debt: (2) Mills and other property owners were not given credit by the city for their proportionate part of the $35,000 fund turned over to the city by the commissioners of the good roads district in which Mills and other residents of the city were taxpayers: (3) the proceedings relied on by the city to constitute a hearing required by law to be given to property owners before making an assessment against them or their property, were insufficient.

[2, 3] It is not contended otherwise than as above indicated that there is in the record affirmative proof of any irregularities, or omissions, on the part of the city in complying with the legal details made a prerequisite to the issuance of a valid tax certificate. The facts relating to that hearing are without dispute, and the evidence is mainly documentary, being taken from the minutes of the city council. That evidence may be summarized as follows: On May 17, 1915, the city council met in special session for the purpose of hearing the owners of property abutting on West Second avenue with reference to their proposed assessments for the improvement of that street. A quorum was present. The mayor stated the object of the meeting, and asked if there was any one present who wanted to be heard. Only two taxpayers appeared, neither of whom represented Mills. After they were heard, at 11:15 o'clock of the same day, the mayor again called for those who had any objection to make. None appeared. On May 18, 1915, an ordinance, fixing the assessment against the different property owners, was introduced, and later passed. That ordinance recites that Mills owned 877½ feet on the north side of West Second avenue, in block 49, according to the map of the city of Corsicana. The total cost assessed against him was $1,437.25. Article 1013 of the Revised Civil Statutes, which is the same as a section of the amended city charter, pro-

vides that no assessment shall be made against any abutting property, or its owner, until a full and fair hearing shall first have been given to the owner, preceded by a reasonable notice thereof. The hearing is to be before the governing body of the city— "at which hearing such owners shall have the right to contest the said assessment and personal liability, and the regularity of the proceedings with reference to the improvement, and the benefits of said improvement to their property, and any other matter with reference thereto."

We are of the opinion that the proceedings shown by the minutes above referred to are sufficient to constitute a hearing within the meaning of the statute. Jones v. Houston, 188 S. W. 690, and cases cited. The purpose of that provision of the law is to furnish the opportunity for the taxpayers to present objections to any step in the proceedings occurring up to that time, and also to contest, if they see fit, the respective amounts to be assessed against them. In addition to this, they could raise the objection that the contemplated pavement was not needed as a part of the public improvement. It is after having accorded this opportunity, and not before, that the governing body is authorized to make an assessment against the owner or his property. Doubtless it is contemplated that the taxpayer should be previously informed by some form of notice of a tentative sum which he will be required to pay. But when, as in this case, the taxpayer makes default, he leaves the matter of fixing the assessment to the judgment of the governing body. He is informed by the notice served upon him that some amount will be assessed against him or his property, and he is given the privilege of being present and being heard as to what that amount shall be. If after the assessment is made it is unsatisfactory to him, or if his objections to the proceedings are overruled, or if he is of the opinion, whether he has appeared or not, that there were fatal irregularities, or that the assessment is unfair, or that the improvement is unnecessary, he has the right within 20 days thereafter to have the action of the governing body reviewed in some court of competent jurisdiction.

[4] In order to overcome the prima facie proof made by the recitals in the certificate issued in this instance, it devolved upon Mills to show that he had no notice, or an insufficient notice. This was not done. There seems to be no contest of the fact of notice, or of the sufficiency of the notice. We must therefore assume that Mills had a full and fair opportunity to present every objection he has to any of the proceedings which had theretofore occurred. He has an opportunity to question the right of the city to make the kind of improvements contemplated, to object to the character of the material used,

or to object to being assessed upon the front-foot plan of paying the cost of the street improvement. He did none of these.

[5] Counsel for Mills attack as invalid the law which empowers the governing body of the city to act as a judicial tribunal to hear complaints of this character. They insist that this proceeding is in the nature of one taking private property for the public use, and that the Constitution has lodged that authority elsewhere. If this proceeding were one for the purpose of condemning specific property to be applied to public use the proposition might be correct, but it is not. This is merely a proceeding to fix an equitable and fair sum for purposes of taxation, based upon private benefits accruing to the property of the taxpayer. The fact that in the paving scheme water was diverted from the premises to adjacent property, which increased the normal damages caused by the natural flow of the water, presented quite a different question, and one which the governing body of the city did not undertake to adjudicate. The validity of the statute under consideration is not to be tested by the incidental issues which may grow out of the paving controversy, but by the powers which by its terms are conferred upon the governing body of the city in carrying out its scheme of taxation.

[6] It is also argued that the certificate was invalid because the city failed to credit Mills and other taxpayers within the city with the amount of money received from the good roads district, and which was used by the city in paying its part of the improvement on that street. The records shows that the city paid $3,996.59 of its one-fourth of the cost of that improvement, with money delivered to it by the good roads commissioners. The contention is that in failing to give due credit for this Mills was taxed twice for the same purpose. That may be true, and still the objection would be untenable. Practically all the revenues of the city for street improvement must be raised by taxation in some form. The city has to first collect from Mills and other taxpayers any sum which it expended in the payment of its one-fourth part of the expense of that street improvement. So far as the weight of the burden of taxation is concerned, it is immaterial that Mills and others paid it in the form of a good roads tax, or by an increased city tax for this purpose. The more the city took from the road fund the less it was called upon to collect from its taxpayers in order to raise the needed revenue. The evidence shows that the good roads tax was so distributed that it fell equally upon all the residents of the city, and was applied to other streets also. Hence Mills has no right to complain.

[7] It is further contended that the certifi-

cate was invalid because at the time the contract was let to Worthington no provision was made for paying the debt incurred by the city as is required by the Constitution. A debt within the meaning of article 11, § 7, of the Constitution, for which provision must be made, is one which has to be paid out of the future revenues of the municipality. Case v. Camp County, 218 S. W. 1; McNeal v. Waco, 89 Tex. 83, 33 S. W. 322. That provision has no reference to obligations which are to be paid during the current year and from the current funds or money on hand. The proof shows that at the time this contract was let the city had on hand ample funds to meet its part of the cost of doing the paving; that the work was completed and the city's part paid during the current year. It also appears that the city did make provision for paying the remaining three-fourths of what was due Worthington by assessing that amount against the abutting property owners in the manner disclosed by this record. Moreover, this is not a suit against the city to enforce a municipal liability for an unpaid debt, but one in which the taxpayer is resisting a tax levied to pay a debt, and provided for at the time the debt was created.

[8] Notwithstanding this suit was filed more than 20 days after the date of the hearing accorded to the taxpayers owning property on West Second avenue, the court permitted an inquiry into the question of benefits to the property of Mills. The evidence upon that issue was conflicting. Some of the witnesses testified that the improvements were practically worthless at the time of trial, as well as when made, and that no benefits had accrued to the abutting property owners. Others testified that Mills' property was worth about $15,000, and that it had been materially enhanced in value by reason of the improvements. The estimates of the enhancement ranged from 10 to 25 per cent. of the value of the property. As justifying the right to raise that issue in this suit filed more than 20 days after the hearing above referred to, counsel for Mills refer to the case of Blome v. Herd, 185 S. W. 53. In that case suit was filed within the time allowed by the city charter, and it was permissible to raise in that suit any issue which might have been raised at the previous hearing provided for. We are of opinion that under the evidence disclosed by the record the court erred in peremptorily instructing a verdict against the city and Worthington upon the certificate sued on. We are further of the opinion that the judgment should be reversed and judgment here rendered against Mills and in favor of the city and Worthington for the amount of the certificate and the accrued interest.

We pass now to the consideration of the appeal of Mills from the judgment rendered denying damages for flooding his property. The principal grounds relied upon for a reversal of that judgment are embraced in objections to the charge of the court upon the issues of fact.

[9, 10] In the first and second paragraphs of the charge the court defines in a general way the terms "ordinary care," "negligence," and "contributory negligence." These are objected to upon the ground that the liability of the city and Worthington was not dependent upon their negligence in flooding the premises of Mills. While that proposition is correct, this portion of the charge may be treated as harmless surplusage, since the court in submitting the concrete issues did not make liability depend upon negligence.

In the third paragraph the court submitted the principal issue in the following language:

"You are instructed that if you find from the evidence on this trial that the city of Corsicana, or T. J. Worthington, acting under the instructions of the city, by and through the construction of the grades and grading upon intersecting streets leading into said avenues, caused other water to flow into and upon the property of C. H. Mills other than that which naturally and ordinarily flowed into said property, and if you find that plaintiff was damaged by this excess water, if any, flowing into and upon the property of Mills; or if you find that said city, or T. J. Worthington, acting under instructions of said city, so caused water other than that which naturally and ordinarily flowed into and through the property of C. H. Mills to flow and to congregate at the spillway constructed in the pavement of West Second avenue, and which led into the Mills property, and if you further find that said spillway was constructed too small and was insufficient to permit the passage of said water, and impeded the passage of said water so congregated, and if you find that the flow of said water was precipitated upon the property of said Mills with more than ordinary force, and find that the property of Mills was damaged thereby— Then, in either such event, if you so find, you will find for C. H. Mills against the city of Corsicana damages in such sum as you will find will justly compensate him for such use of Mills' property by the city, if any, and the damages thereto, not to exceed $2,000."

The objection urged to that paragraph is that it did not submit along with others the issue of damages resulting from draining filthy water upon the premises of Mills. In stating his damages Mills does not specify any special injury to any particular portion of his property, or as occurring upon any particular occasion, or as resulting from impure water. The complaint is general in charging a depreciation of the value of the premises as a whole on account of the increased servitude imposed upon the water course after the paving was laid in 1915. While the petition alleges in a general way that filthy water was caused to flow upon the premises, the

legitimate inference from the language used is that this polluted water came from territory which before the street paving was laid did not drain into this branch. The evidence upon that issue is not sufficient to justify a finding by the jury of any definite sum for injury resulting merely from filthy water. There is in fact no evidence of any injury resulting from filth alone.

Objection was made to paragraph 5 of the charge because—

"the charge of the court makes liability of the city and Mills' right to recover for damages turn upon the effect which the street improvement in 1915 had upon the water drainage, regardless of what it was prior thereto."

The case pleaded and tried was one for damages resulting from the changes made in the street in 1915. A fair construction of the pleadings will not sustain the contention that Mills sought damages for the flooding of his premises prior to that time. The court therefore had the right to so limit the liability of the city.

[11] Paragraph 6 was as follows:

"You are instructed that if you find that C. H. Mills constructed barricades or obstructions along or across the spillway on Second avenue leading into his property, or that he constructed barricades within his property, and find that the course and flow of the water coming through said spillway into his property was obstructed and retarded, and you find that the damages, if any, to his property was caused thereby; and if you find that this was contributory negligence on the part of C. H. Mills but for which damages would not have occurred to his property—then, if you so find, you will find for defendant city on the issue of damages, and so say by your verdict."

The objection to this charge brought forward in the brief is, in substance, that even if Mills was negligent in placing the obstructions and barricades upon his premises, that fact would not legally exonerate the city from liability. But the charge is not susceptible of the construction put upon it by counsel for Mills. It exonerates the city only in the event the jury finds that Mills putting the barricades and obstructions caused all of the damages. It requires the jury to find that but for this conduct on the part of Mills damage would not have occurred to his property. It is also contended that the evidence is undisputed that these obstructions did not cause the injury to Mills' property; and, further, that the evidence showed conclusively that Mills' property was injured by the increased flooding of his land. It is sufficient to say that those were disputed issues of fact, and are settled by the finding of the jury.

[12] In paragraph 7 the court instructed the jury to return a verdict in favor of

Worthington upon the ground that he was the mere agent of the city in making the changes complained of on West Second avenue. It may be true that Worthington, notwithstanding his attitude as a contractor, would have been jointly liable with the city for any injury to adjacent property caused by an increase in the flow of water. Still the error, if any, in this instance was harmless, because in submitting the main issue of liability the court made the city responsible for whatever Worthington did. The verdict of the jury, therefore, which exonerates the city for Worthington's conduct is tatamount to an acquittal of Worthington also of any culpable liability for the changes made.

There are many other assignments, which we have carefully considered and think should be overruled.

Numerous special charges were requested and refused. Whatever of merit any of them contained was embraced in the general charge of the court.

We think the issues were fairly submitted, and that the testimony was sufficient to support the finding of the jury. Therefore this judgment will be affirmed.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes