**ELLIOTT v. TEXAS, PACIFIC COAL & OIL CO. (No. 12125.)**

Court of Civil Appeals of Texas. Fort Worth. May 4, 1929.

Rehearing Denied June 8, 1929.

W. D. McFarlane, of Graham, for appellant.

W. L. Scott, of Graham, and Clarence Wightman, of Fort Worth, for appellee.

CONNER, C. J. This is an appeal from a judgment in favor of appellee company on a street improvement certificate issued by the city of Olney, Tex., for the sum of $982.39, principal and interest, with a foreclosure of a lien given by law to secure the payment of said certificate on lot 1, block 23, in Olney town site addition. Appellant's defense was that the property upon which the lien was enforced was a homestead at and prior to the time of the street improvement made.

The essential facts may be briefly stated as follows: Appellant was a divorced widow, and had been for some 23 years prior to the month of November, 1925, when she purchased the lot in controversy and moved thereon, she at the time having no minor child of her own. The improvement in question made and the issuance of the certificate imposing the lien was in April, 1927.

Appellant testified, among other things, that she claimed as her own the child of an adult daughter as a dependent. She further testified:

"This grandchild is a girl, and its name is Lafrance Powell. She is my baby girl's child. She was given to me at her birth; her mother was a nurse, she had to make a living; you might say she and the doctor both gave the child to me; the doctor put the child on my bed and said 'Grandmother, that is your child.' I said is that right, and the mother says, 'I guess it is, you raised me and here is the child.'

"The first two years I kept the child with me all the time; I took it out on the lease and kept that child in a buggy on the lease with me, on a bottle; its mother worked here in town. She left the child with me during that time; she never kept it at all, never cared for it no more than if it wasn't her child. I put it on a bottle, Eagle's brand milk, and I kept that child in the same kitchen with me when I was cooking out there, and the child stayed with me until I got this arm broken, and they claimed I had T. B. of the bone, and they were going to take it off; they sent me to Carlsbad, New Mexico, and down there they said I didn't have no T. B. at all and they brought me back to Eureka Springs and I stayed there three months, and I had the child with me then.

"I raised the child on a bottle; wherever I worked the child would be with me; I've rolled it up and down the cotton patches; I've taken it to people's houses and washed and cleaned yards; I did any kind of work that anybody would give me. I say that it was mine and I cared for it, but when I get down on my back they won't let me have it; they say I can't care for it like I ought to, which I can't.

"I claim the child at this time, because the mother give it to me at the time of its birth. I have claimed that child ever since that time; it was my 18th grandchild. The child is not with me at this time for the reason I am not able to care for it. I have been sick, and that is the reason the child has not been with me. I don't reckon you would call it legally adopted by me, but it was given to me by its mother and the doctor. It is my understanding you have to be worth so much before you can adopt a child. * * *

"This grandchild had lived with me before I purchased this property, putting all the time together for about five or six years. I had supported and cared for the child, and made a living for the child, and had furnished it with food and clothing. I furnished it a home and a place to stay. The mother gave me the child. I turned the child back to its mother on account of my sickness; I was sent to the hospital and they told me any time I felt that I was able to care for the child it would be returned to me. It has

been my intention all the time to send for the child as soon as I thought my health would permit me to look after it and support it. * * *

"I lived in Olney once before and they sent me off to the hospital, but this last time I have lived in Olney for three years. The first time I was at Olney I expect it was twenty years ago, it was when they sank the first well there; I was cooking at that time and had this grandchild with me about six miles east of Olney. It was just a little infant then. I really couldn't say exactly how old it is now, but it is 10 or 12 years old, somewhere along there.

"This child was not with me when I came back to Olney this last time; it was with its mother at Fort Worth. I can't say that it is living with its mother entirely, as she has a woman to care for the child while she is at work. I could not say how many years the child has been at Fort Worth, but it has been to see me two or three times. * * *

"Yes, sir, I testified in a criminal case here last fall. I also testified in this case three or four months ago. I testified at that time that I had been a widow for 23 years. At that time I said I had not been living on this property quite a year. I testified then that I did not have any one living with me as a part of my family, I testified that I was alone. I have not been alone all the time since I've owned this property. I did not have any of my family living with me for any length of time, since I have owned this property. Just once in a while some of them visited me. * * *

"I can't say that I have had no one to support as that grandchild has been with me, and when I would take down sick they would come and get her. This child has not lived with me since I've owned this property; it has just been to see me on a visit; it had not lived with me any for a year before that time, not any longer than six weeks, just on a visit. The child's mother has some one looking after it while she is out nursing. * * *

"The child has been at Fort Worth for the past five years and the mother works and has a woman to take care of the child, but I bore the biggest part of the expenses. * * *

"I will be 79 years old next September."

Upon the introduction of testimony in behalf of plaintiff and of the testimony of defendant hereinabove quoted, the court gave a peremptory instruction in favor of plaintiff in accordance with which the verdict and judgment was entered.

The principal contention in behalf of appellant is to the effect that the testimony of appellant, the material portion of which we have quoted, was to raise the issue of the homestead character of the lot in question, and that hence the court committed a fundamental error in directing the jury to find against her.

■ Section 50 of article 16 of our Constitution exempts the homestead of a "family" from forced sale. But it is said in the decisions that the purpose of this constitutional provision is to protect a family composed of a father and mother and children, or dependents for whose support he or she is either legally or morally bound. See Howard v. Marshall, 48 Tex. 471; Whitehead v. Nickelson, 48 Tex. 517; Lane v. Philips, 69 Tex. 240, 6 S. W. 610, 5 Am. St. Rep. 41.

This court, in Mullins v. Looke, 8 Tex. Civ. App. 138, 27 S. W. 926, 928, said: "It is not by any means an easy task to define a 'family,' within the meaning of our constitution creating this exemption; but we believe the best-considered cases in this state, in the absence of a wife [or husband], require either a legal or moral obligation on the part of the one claiming the exemption to support the others for whom it is claimed."

■ A mere intention to make a lot a homestead is not sufficient; the intention must be accompanied by circumstances manifesting such intention. See Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832.

In Zapp v. Strothmeyer, 75 Tex. 638, 13 S. W. 9, it was held that the constant presence of children is not necessary to establish the homestead claim, in that the father in that case was still liable for the support of a son who was away at school, but might return at any time. See, also, Crenshaw v. Bray (Tex. Civ. App.) 50 S. W. 623, of like tenor.

■ We know of no decision which will support the contention that a mere verbal gift of a parent of a child to another person will confer upon such other person any legal authority for its control, or any legal or moral obligation for its support. On the contrary, in the case of Taylor v. Deseve, 81 Tex. 246, 16 S. W. 1008, it was held that a verbal agreement between the father, the mother being dead, and another, to the effect that the other should have the custody of the child, did not constitute an adoption of the child, and that no rights grew out of such agreement. This case was cited with approval in the case of Mullins v. Looke, 8 Tex. Civ. App. 138, 27 S. W. 926, where it was held, in an opinion by Mr. Justice Head, formerly of this court, that a single man living with a child whom he had taken to raise, but whom he was under no legal or moral obligation to support, was not the head of a "family," within the meaning of the homestead law.

It is not pretended that appellant legally adopted her grandchild, as provided for in the Acts of 1850 (page 36) and carried forward in the several revisions of the statutes under the title "Adoption," and it seems quite plain to us that the trial court was correct in holding that appellant by her testimony wholly failed as a matter of law to establish the homestead right claimed by her.

■ Appellant, in her motion for new trial

and in the brief presented in her behalf in this court also complains that it was not made to appear that the city of Olney had been duly incorporated; that the ordinances offered in evidence adopting the paving laws as provided for in articles 1136 to 1139, inclusive, Rev. St. 1925, contained no enacting clause; that it was not shown that the paving was done in accordance with plans and specifications on file in the city secretary's office; that the street in question was located in the city of Olney; and that the amount in controversy was shown not to exceed three-fourths of the entire cost of said improvement, etc. Little notice we think need be given to these objections, for, as expressly provided in article 1090, Rev. St., 1925, under the title of street improvement and providing for the same and for the issuance of certificates of costs:

"If any such certificate shall recite that the proceedings with reference to making such improvements have been regularly had in compliance with law, and that all prerequisites to the fixing of the assessment lien against the property described in said certificate and fixing the personal liability of the owner have been performed, such certificate shall be prima facie evidence of the facts so recited."

The certificate declared upon by appellee and offered in evidence recites the facts stated in the above quotation from the statute, and that the improvement had been completed by the company making the same in compliance with the terms of the contract. The statement of facts discloses no contradiction of the prima facie case thus made, unless it be, as appellant contends, that the ordinance of the city council of the city of Olney adopting articles 1006 to 1017, Vernon's Sayles' Ann. Civ. St. 1914, is without a proper enacting clause. Article 1012, Revised Statutes of 1925, provides that the style of all ordinances shall be "Be it ordained by the city council of the city of ——— (inserting the name of the city); but it may be omitted when published in the form of a book or pamphlet."

The ordinance here attacked, after reciting prerequisites, reads:

"It is therefore ordered by the City Council of the City of Olney that the provisions of Chapter 11, articles 1006 to 1017, Sayles' Revised Civil Statutes (1914) of the State of Texas be and the same is hereby adopted to be of full force and effect hereafter within the corporate limits of the City of Olney."

We see no fatal defect in the ordinance. The term "order" of the city council, as recited in the ordinance, in substantial meaning is the same as the term "ordained." The form of the enacting clause of the ordinance therefore does not overcome the prima facie

case made by the recitations of regularity in the certificate. See Dillon v. Whitley (Tex. Civ. App.) 210 S. W. 329; Elmendorf v. City of San Antonio (Tex. Civ. App.) 223 S. W. 631; City of Corsicana v. Mills (Tex. Civ. App.) 235 S. W. 220; Holt v. Uvalde Co. (Tex. Civ. App.) 258 S. W. 285; Watland v. L. E. Whitham & Co. (Tex. Civ. App.) 261 S. W. 387; McCarthy v. City of Denison (Tex. Civ. App.) 262 S. W. 830.

We conclude that all assignments of error must be overruled, and the judgment affirmed.