No. 2313.

## JERRY LANE v. WILLIAM PHILIPS.

1. HOMESTEAD.—The benefit of the homestead law can not extend to a man and woman living together in adultery; they do not compose such a family as can be recognized by law. But a natural obligation rests on the father of illegitimate children to support them, and they living with him may constitute such a family, as may assert homestead rights.

APPEAL from San Augustine. Tried below before the Hon. James I. Perkins.

*S. W. Blount,* for appellant, cited Constitution of Texas, article 16, section 50; Roco v. Green, 50 Texas, 483; Howard v. Marshall, 48 Texas; Whitehead v. Nicholson, 48 Texas; Wilson v. Cochran, 31 Texas; Thompson on Homestead, section 44, et seq.; Pratt's Rights Married Women, page 185, et seq.

*Rufus Price,* for appellee.

STAYTON, ASSOCIATE JUSTICE. This is an action of trespass to try title, which was instituted by the appellant, and tried without a jury. It appears, from the conclusions of fact filed, that the appellant was the owner of the land, and that a judgment was obtained against him on which an execution issued, and this was levied on the land in controversy, which was subsequently sold, and at that sale the appellee became the purchaser. Those proceedings were found to be regular and sufficient to pass title to the appellee, unless the property was the home-

stead of the appellant at the time of the levy.    The facts bearing on that question are thus stated in the conclusions of fact:

"At the date of said levy plaintiff was a single man, had never been married, but was living in a house on said land, occupying the same as a home, and had so resided more than five years before said time.    That he had living with him a woman, with whom he had lived and cohabited for more than twelve years before the levy, and two illegitimate children, of whom he was the father and said woman the mother; that he and said woman and children lived together in all respects as husband and wife and children, except that he and said woman had never been married."

It further appears that part of the land was cultivated.    There is also a finding that a sister of the appellant and her children lived on the land which was contiguous to some owned by her, but as this fact bears no influence upon the decision which will be made upon this appeal, the particulars of the sister's occupancy need not be stated.

The court found that such an aggregation of persons did not constitute a family within the meaning of the law exempting the homestead from forced sale, and entered a judgment in favor of the defendant.    The correctness of this conclusion is the sole question in the case, the tract of land containing less than two hundred acres.

It is very clear that a family, such as is contemplated by the Constitution and laws exempting the homestead from forced sale, can not be made up with constituents consisting only of a man and a woman living together, as were the appellant and the woman with whom he was living.    The law prohibits and makes penal such cohabitation as existed between the appellant and the woman with whom he lived, and it never was intended that persons so associated, and living in plain violation of law should be deemed a family, which it is the purpose of the homestead exemption to protect.    To constitute a family, within the meaning of the law giving the homestead exemption, the persons who dwell together must not in the fact of so doing be violators of the law of the land.

If, however, the relationship between the appellant and the children, who lived with him, be such as to constitute these persons a family, then his homestead right must be recognized and enforced, notwithstanding the fact that his cohabitation with the woman was illegal; for the homestead right exis-

ting by reason of and for the protection of the family, of whomsoever composed, can not be defeated by the fact that the head of the family permitted another person with whom he unlawfully cohabited to dwell on the land. (Whitehead v. Topp, 69 Missouri, 415.) There has been much controversy as to the relationship which must exist between persons dwelling together to constitute a family within the meaning of the laws giving the homestead exemption, but we will not attempt to reconcile them or lay down a rule which can be applied in all cases. If the children who live with the appellant had been born unto him in wedlock, no one would question that they and he would constitute a family entitled to homestead exemption, though he was living with a mistress. They, however, were not so born unto him, and while they are his children in fact, the rules of the common law refuse to recognize them as his children, to impose upon him the duties and obligations which the lawful father can not avoid, or to confer upon them the right to support and paternal care, which the child begotten in wedlock has.

The harshness of this rule has long been felt in England, and in some of the States statutes have existed and still exist, which compel the father of an illegitimate child to support it or contribute to its support. Such statutes well illustrate the fact that such a father does not sustain the same relation to his illegitimate child with reference to obligation to support it, as one not so related to it, does. Upon what theory, can statutes such as we have referred to be held valid? It has usually been said the State has the power to pass such laws in order to protect the public from liability to support the child, and this may be admitted, but if there be no liability resting on the father to support the child other than such as he must bear in common with other members of society, whence the power to impose upon him the entire burden. A statute which would require A to support the child of B, would most probably be held contrary to such constitutional provisions as provide for equality in public burdens, or would be held to be the exercise of an arbitrary power inconsistent with that relation between the State and the citizen, which all governments not thoroughly despotic recognize. Such statutes as we have referred to, are standing protests against the common law rule as to the obligation of a father to support his illegitimate child.

They recognize, however, not only the high moral obligation the father is under in such cases, but also the natural obligation

which the common law, for reasons of public policy, refused to enforce; for it would be difficult to justify a law embracing or imposing a personal obligation, upon the sole ground that its enforcement would compel the performance of a merely moral' duty. There is a natural obligation on one who out of wedlock has brought a child into existence, to support it during the years of its inability to take care of itself.

If a statute existed in this State which authorized the father of an illegitimate child to have its custody and made him liable for its support, no one would question that such a father and child, living together, would constitute a family.

If, without a statute, the father recognizes his natural and moral obligation to the child and takes it to his home and there supports it, is his ability to do this to be restricted by witholding from him the exemption which he would be entitled to if he did, under legal compulsion, that which he does voluntarily? Such is, in our opinion, not the spirit of the laws giving exemptions. No stronger natural or moral obligation could rest on the appellant than that which he is under to support his children who live with him, illegitimate though they be; and we are unwilling to hold that nothing short of a legal obligation to support them will suffice to make them constituents of his family.

This case, in its facts, is much like the case of Bell v. Keach, (80 Kentucky, 44.) In that case, property claimed to be exempt was seized and sold under execution, and it appeared that the person claiming the exemption, without marriage had lived with a woman for about twenty years, she passing for his wife and having by him one son, then about nineteen years of age. The father, mother and son constituted the family, and in disposing of the case the court said: "It may be true that the appellee and the woman residing with him were living in adultery, and that he may not have been strictly under any natural or legal obligation to support her; and counsel for appellant contends that it would be against public policy, as well as the spirit of the exemption laws, to treat persons thus dwelling together as entitled to its salutary provisions. But it is not necessary to decide how the exemption laws should be construed or administered, if they alone were to be affected. For whatever may be their offenses or the relation they sustain to each other, appellee was under a natural and moral obligation to support his infant son, though he may have been born out of wedlock; and, so far from being against, it is in accordance with the spirit of the

law, as well as public policy, that he should be treated as a member of the family of appellee."

We are of the opinion that the appellant and his children constituted such a family as is entitled to the homestead exemption; that the property in controversy was not subject to forced sale, and that judgment should have been rendered in his favor.

The judgment of the district court will be reversed and here rendered in favor of the appellant.

It is so ordered.

*Reversed and remanded.*

Opinion delivered December 2, 1887.