AMERICA GAY ET AL. v. R. R. HALTON.

No. 2909.

**1. Homestead—Family—Mortgage.**—H. M. Gay, unmarried, lived with America Gay and they had children. Becoming involved, he conveyed to Campbell the place of the residence to put it out of reach of his creditors. Gay and his *family* continued to reside upon the premises. Under a power of attorney from Campbell, Gay conveyed the land to Still & Lacy, to whom he was indebted, taking from them an obligation to reconvey upon repayment of the purchase money. Subsequent to Gay's

death the woman America and the children bought of Still & Lacy, giving the notes in suit for the purchase money, which were assigned to the plaintiff. The makers of the note resisted payment, claiming that the sale by Gay under Campbell's authority was void, in that it was an attempt to execute a mortgage upon the homestead. *Held:*

1.   The deed from Gay to Campbell was valid between the parties.

2.   That at the time of the deed to Still & Lacy the title was in Campbell, not in Gay.

3.   The woman and the children had no right in the land at the time of the sale.

4.   The question of mortgage and homestead can not be raised by the defendants, they showing no interest in the land when it was sold under the power of attorney.

2.   **Case Adhered To.**—Lane v. Phillips, 69 Texas, 240, adhered to.

APPEAL from Rusk.   Tried below before Hon. A. J. Booty.

H. M. Gay was a white man and America Gay is a negro woman.   Before emancipation she was his slave, and while such slave he began cohabiting with her and had children by her.   After emancipation they continued to live together as before and more children were born to them.

H. M. Gay in 1858 owned about 1400 acres of land in one tract, and thereafter lived on some part of the tract with America Gay and their children (these intervenors), selling off portions of same from time to time, until in 1873 he had left only two hundred acres, of which one hundred acres is involved in this suit.   In 1858 Gay made a deed to his brother-in-law Campbell, who lived in Georgia, but who was never on the land and never exercised any control or ownership over it.   In 1873 Gay and America and their children, Jasper, Alexander, Longenia, and Caroline, all resided together in the same house, in the same apartments, and as one family, and so continued to reside until the death of Gay in 1881 or 1882, and until the present time, where the remainder still reside.   A short time before his death Gay was indebted to Still & Lacy for merchandise in the sum of about $300.   Gay being in failing health, he made a deed to Still & Lacy conveying the two hundred acres (homestead) and simultaneously took from them an agreement to reconvey the land upon payment to them (Still & Lacy) of their debt and interest.   After Gay's death Still & Lacy sold one hundred acres of this land to outside parties, and sold this one hundred acres to these defendants, America and Jasper Gay, executing a deed and taking their notes for same.   These notes Still & Lacy transferred to R. R. Halton, appellee herein, who brought this suit on same to foreclose the vendor's lien and for possession.   Defendants and intervenors pleaded that the notes were not for purchase money and that the land was their homestead, and that said sale or pretended sale to Still & Lacy was only an effort to secure their indebtedness by creating a lien on the homestead.

The cause was tried without a jury and judgment given against defendants and intervenors, from which they have appealed to this court.

*Buford & Hall,* for appellants. — 1.   The court erred in giving judgment on the notes and foreclosing a lien on the land against defendants

and intervenors, because it was shown, and the court so found in conclusion of facts, that the land was the homestead of defendants and intervenors and that plaintiff knew said fact at the time he bought the notes; and because the note sued on was not given for the purchase money of the land, but was given for goods, wares, and merchandise. Astugueville v. Laustaunau, 61 Texas, 321; Hudson v. Wilkinson, 45 Texas, 444; Loving v. Milliken, 59 Texas, 425; Heidenheimer v. Stewart, 65 Texas, 321; Carter v. Carter, 5 Texas, 93.

2.  An unmarried man owning, cultivating, and occupying land for more than five years, and using and claiming the same as his homestead, together with his mistress and illegitimate children, constitute such a family as is entitled to the homestead exemption.  Lane v. Phillips, 69 Texas, 240.

*G. H. Gould,* for appellee. — 1.  Appellants can not claim any homestead rights in the land in suit, because H. M. Gay, under whom they claim, had no title to the land at his death and therefore no homestead right in it, and was a single man.

2.  The homestead question is not properly in this case, there being no facts to raise that issue.

3.  It is submitted that the case of Lane v. Phillips, 69 Texas, 240, is not applicable to this case for many reasons, among which are these: That was a forced sale, while this was voluntary.  There homestead right was claimed from the first; here it was not until after appellee had parted with his money, relying upon the representations of appellants that the notes were all right.

GAINES, ASSOCIATE JUSTICE.—The facts of this case are fully shown by the findings of the judge before whom the case was tried without a jury.  They are as follows:  In 1853 one H. M. Gay became the owner of a tract of land of which that in controversy forms a part.  He was never married.  In 1858, in order to hinder and delay his creditors, he conveyed the entire tract to one Campbell, who lived in the State of Georgia.  Campbell never intended to claim the land against Gay, but the land was never reconveyed to the latter.  Gay remained in possession until the year 1881 or 1882, when he died insolvent.  In 1878 Gay, acting under a power of attorney executed to him by Campbell, made a deed to the premises in controversy to Still & Lacy in payment of a debt for $300 due by Gay to them, and for $100 to be paid in future.  At the same time Still & Lacy executed and delivered to Gay their promise in writing to reconvey the land to Campbell on the payment to them of the $400 and interest within three years from date.

For a long time previous to his death and up to that time H. M. Gay cohabited with America Gay, one of the appellants.  The other appellants

are the children of H. M. and America Gay, the fruit of their illegitimate cohabitation. After the death of H. M. Gay, America Gay and Jasper Gay occupied the premises in controversy, paying rent to Still & Lacy until the 1st day of January, 1884, when they bought the land of their landlords, and in consideration therefor executed the notes described in the petition in this case. The notes were transferred to appellee Holton for value before maturity, and he brought this suit against the makers to enforce their payment, claiming a lien upon the land. The other appellants intervened in the suit, claiming that the premises in controversy were the homestead of H. M. Gay; that the transaction between him as attorney of Campbell on the one part and Still & Lacy on the other was but a mortgage, and therefore void under the Constitution, and that as surviving members of the family for whose protection the land was exempt from forced sale, they were entitled to have it decreed to them. The defendants set up a similar claim.

In Lane v. Phillips, 69 Texas, 240, this court held that a father and his illegitimate children who lived together constituted a family whose homestead would be protected from forced sale. It may be therefore that if H. M. Gay had been the owner of the property at the date of the deed from him as attorney of Campbell to Still & Lacy, and had been the grantor in that deed, the transaction, being but a mortgage, would have been void, and the question might then have been presented whether after the death of the father the illegitimate offspring had any rights in the homestead. But the court below concluded that Campbell was the owner of the property, and hence that the defendants and intervenors were without any right in the premises whatever except such as defendants derived from their conveyance from Still & Lacy. We think the court correct in this conclusion. The conveyance from H. M. Gay to Campbell being in fraud of creditors, was good as between the parties, and although Campbell may have intended that Gay should enjoy the use of the land, this did not alter their legal or equitable rights. The title remained wholly in Campbell. Under the evidence adduced judgment was properly rendered for appellees.

The defendants and intervenors offered in evidence during the progress of the trial a deed executed in 1873 by one Jimmerson and wife to H. M. Gay to sixty acres of the land in controversy, which upon objection was excluded by the court. It does not appear whence Jimmerson and wife derived their title, if any they had, and therefore the evidence was irrelevant. We do not consider it necessary to pass upon the question whether or not under the agreement to read the records the appellants had a right to read a record which was not made until the trial had begun.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Delivered November 26, 1889.