**AFFIRM; and Opinion Filed August 9, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00019-CV

### IN THE INTEREST OF A.E.R. AND E.N.R., CHILDREN

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-51128-2012**

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Father appeals the amended final decree of divorce in this suit affecting the parent–child relationship. In three issues, he challenges the award of attorney's fees and retroactive child support to Mother and the division of the marital property. We resolve Father's issues against him and affirm the amended final decree of divorce.

### Background

Mother and Father sued each other for divorce. Following a bench trial, the court granted a divorce to the parties and appointed them joint managing conservators of the children with Mother being the parent with the exclusive right to designate the children's primary residence. The court awarded Mother $130,000 in attorney's fees, over $50,000 in retroactive child support, and, according to Father, over 80% of the marital estate. The court made extensive findings of fact and conclusions of law. Father challenges those findings with regard to attorney's fees, retroactive child support, and the division of the marital property.

## Standard of Review

We review most family law issues, including the issues in this appeal, for an abuse of discretion. *See, e.g.*, *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (award of child support); *In re J.R. III*, No. 05-14-00338-CV, 2015 WL 4639625, at *7 (Tex. App.—Dallas Aug. 5, 2015, no pet.) (award of attorney's fees); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981) (division of estate). A court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to guiding rules and principles. *See In re M.P.B.*, 257 S.W.3d 804, 811 (Tex. App.—Dallas 2008, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied); *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.).

In family law cases, legal and factual sufficiency challenges do not constitute independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. *In re Marriage of C.A.S.*, 405 S.W.3d 373, 382–83 (Tex. App.—Dallas 2013, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion. *Id.*

A trial court's findings are reviewable for legal and factual sufficiency of the evidence under the same standards that are applied in reviewing evidence supporting a jury's answer. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). In evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Newberry v. Newberry*, 351 S.W.3d 552, 555 (Tex.

App.—El Paso 2011, no pet.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In a factual sufficiency review, we examine all the evidence in the record and will reverse only if the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Newberry*, 351 S.W.3d at 555–56.

## Attorney's Fees

In his first issue, Father contends that the trial court abused its discretion by awarding $130,000 in attorney's fees to Mother because the evidence is legally insufficient to support the award.

A trial court has broad discretion to award reasonable attorney's fees in a SAPCR. TEX. FAM. CODE ANN. § 106.002 (West 2014); *In re J.R. III*, 2015 WL 4639625, at *7. The reasonableness of attorney's fees is a question of fact that must be supported by evidence. *In re M.A.N.M.*, 231 S.W.3d at 567. Under a non-lodestar method of calculating attorney's fees, an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award. *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010) (attorney's brief testimony about experience, total amount of fees, and that total amount of fees was reasonable and necessary is "some evidence" of reasonable attorney's fee); *see also In re J.R. III*, 2015 WL 4639625, at *7.

Father argues that Mother's evidence of attorney's fees is insufficient under both the lodestar and non-lodestar methods of calculating attorney's fees, and he specifically challenges the evidence supporting the following finding:

> h.    attorney's fees and costs of [Mother] in excess of $130,000.00 reasonably and necessarily incurred by [Mother] for the protection, health, safety, and welfare of the children and as a result of the protracted, excessive discovery non-compliance, and cost-increasing litigation by [Father] in this case[.]

–3–

Father contends that Mother's attorney offered no evidence about his experience, no evidence about how he arrived at the $130,000 amount, no evidence of the services performed or why they were necessary, and no evidence of who performed those services. But *Garcia* does not require evidence on all these specifics. 319 S.W.3d at 641.

In *Garcia*, the attorney testified that he practiced medical-malpractice litigation in Hidalgo County since 1984 and that $12,200 was a reasonable and necessary attorney's fee for handling that type of case "up to the point of dismissal." *Id*. The supreme court held that the attorney's testimony was sufficient to support the award. *Id*. In so holding, the court stated that the attorney's testimony was not conclusory and was "not like other expert witness testimony" because it "consist[ed] of the attorney's personal knowledge about the underlying work and its particular value to the client." *Id*. The court compared the attorney's testimony "to that of a property owner whose personal knowledge qualifies him to give an opinion about his own property's value." *Id*. The court explained that the opposing party's attorney also had "some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee." *Id*. The court said that although the attorney "testified briefly about his experience in medical malpractice litigation," the opposing party "did not cross-examine the witness or present any additional evidence on the issue of attorney's fees" and did not "question the reasonableness of the amount of those fees." *Id*. The court held that the testimony, while lacking in "specifics," was "some evidence of what a reasonable attorney's fee might be in this case." *Id*.

Here, Mother's attorney testified that he had been licensed for over 20 years, was in good standing with the State Bar, and was familiar with the hourly rates for attorneys and paralegals "in this locale for matters of this sort and of this complexity and in this area of law." He stated that in his opinion $250 an hour was a reasonable hourly rate for an attorney and $95 an hour

was a reasonable rate for a paralegal. Although he did not testify about the total number of hours worked on the case, he gave extensive testimony about the work performed on the case. He stated that there had "been four or five trial settings, multiple agreed scheduling orders" and "20, 21, or 22 separate hearings or settings" and "dozens of motions and responses." He testified that much of the fees and expenses were incurred because Father failed to respond timely to discovery requests and then when he did, he produced them in a way that "was an unmitigated disaster." Mother's attorney testified that he agreed to allow Father to produce documents by Drop Box instead of in person, and that when Father uploaded the documents to Drop Box, they were unorganized and it took "an inordinate amount of time to download, review and then print and review a document, and there were multiple files that would crash the system." He said it "required dozens and dozens of hours of time just to sort through" the documents and that Father ignored letters that Mother would no longer accept supplementation by Drop Box. The attorney testified that he hired contract paralegals on three separate occasions "to try and get the documents in a manageable form." Additionally, the attorney testified about emergency motions concerning travel out of state to visit family; motions for contempt, to compel, and for sanctions; and showing up for hearings "noticed through e-mails, but not set on the court's calendar."

Mother's attorney noted that between Mother and Father, the attorney's fees in this case were $200,000. He said he had "never in my career had a divorce case that approached this level of attorneys' fees, and in my opinion that is driven primarily 75 to 80 percent by the conduct of [Father] in not answering discovery, none of it answered timely, document dumps that are unorganized . . . ." He testified that in his opinion, "far more than $130,000 is reasonable and necessary."

Father's attorney did not object to Mother's attorney's testimony and reserved questions of him for Father's case-in-chief. But Father did not recall Mother's attorney during his case-in-

chief and did not cross-examine him on the reasonableness or necessity of Mother's attorney's fees. Father's evidence showed that his attorney also billed at $250 an hour, that the rate was reasonable for attorneys in that area, and that he incurred over $107,000 in attorney's fees that "were both reasonable and necessary."

Mother's attorney did not testify specifically that he had practiced law for the past 20 years. But he testified that he had been licensed for 20 years, was in good standing with the Bar, and was familiar with rates charged for these types of cases in that area. He also referred to the total attorney's fees for both parties and stated in his career he had never seen a divorce case that required this amount of fees to resolve. We think a reasonable inference from this testimony is that Mother's attorney had been practicing law for 20 years and had experience in divorce cases. *See In re J.R. III*, 2015 WL 4639625, at *7; *see also In re M.A.N.M.*, 231 S.W.3d at 567. We also may reasonably infer that the trial court was familiar with the rates and time required in a matter like this. *See In re J.R. III*, 2015 WL 4639625, at *7; *see also In re M.A.N.M.*, 231 S.W.3d at 567. Mother's attorney's testimony also supports the trial court's finding that Mother's attorney's fees were the "result of the protracted excessive discovery non-compliance, and cost-increasing litigation by" Father.

Having reviewed the docket sheet in this case, the clerk's record, and the evidence, we conclude that the evidence is legally sufficient to support the trial court's finding. Accordingly, the court did not abuse its discretion by awarding $130,000 in attorney's fees to Mother.

We resolve issue one against Father.

### Retroactive Child Support

In issue two, Father contends, for several reasons, that the trial court abused its discretion by awarding retroactive child support to Mother. We begin with Father's argument that Mother did not have pleadings to support the award and the issue was not tried by consent. Mother

contends that Father did not preserve these issues for our review because he did not make these complaints in the trial court. We agree with Mother.

Even if Mother did not have pleadings to support her claim for retroactive child support, and even if Father did not try the issue of retroactive child support by consent, he had multiple opportunities to object in the trial court to the inclusion of an order to pay retroactive child support, and he did not do so. Mother introduced a summary of relief she was requesting, which included a request for retroactive child support, and Father stated he had "no objection to the summary." There was no additional evidence concerning retroactive child support. But in closing arguments, Mother's attorney asked that the child support be made retroactive to June 2012 because Father had been intentionally unemployed or underemployed during that time. Father did not object. When the trial court sent a memorandum to the parties reflecting how the court intended to rule on the various issues, the court included an award of retroactive child support. Father did not object. Mother submitted a proposed final decree, and Father objected to it with regard to retroactive child support, but only on the ground that it "exceeds the Court's Ruling and makes findings that were not included in the Court's Ruling . . . ."[1]

After the trial court signed the final decree of divorce, which included an order to pay retroactive child support, Father did not object. The trial court amended the final decree of divorce pursuant to Mother's motion to modify. Father did not object to the inclusion of an order to pay retroactive child support. Father filed two motions for new trial, but did not object to the inclusion of an order to pay retroactive child support. Father also moved to modify the amended final decree, but not with respect to the award of retroactive child support.

---

[1] Mother's proposed final decree is not in our record.

Despite having multiple opportunities to object to the inclusion of retroactive child support in the amended final decree of divorce, Father did not do so. Consequently, we conclude that Father did not preserve these complaints for our review. *See* TEX. R. APP. P. 33.1.

Father also contends, however, that an order to pay retroactive child support was improper because he was ordered to pay child support in the temporary orders. *See* TEX. FAM. CODE ANN. § 154.009(a) (court may not order parent to pay retroactive child support if parent previously ordered to pay child support). Father contends that the following provision in the temporary orders constituted an order to pay child support: "[Father is] solely responsible for the cost of all religious activities, including but not limited to: classes, events, Sunday school, temple membership dues, religious education, educational activities, celebrations, and all other religious oriented matters." We disagree.

While child support may be in any manner the court deems appropriate, *see* TEX. FAM. CODE ANN. § 154.001, the support is to provide necessities for the child as guided by the best interests of the child, *see Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 & n.3 (Tex. 1993). And in the temporary orders, the trial court expressly deleted the references to child support and hand wrote, "No child support in addition to medical support." Consequently, we conclude that Father was not ordered to pay child support in the temporary orders and the trial court was not barred by section 154.009 from ordering retroactive child support. *See* TEX. FAM. CODE ANN. § 154.009.

Father also argues that the award of retroactive child support was an abuse of discretion because there is no evidence to support the award. He contends that during the period for which retroactive child support was awarded, he and Mother were each receiving monthly payments of over $11,000, in addition to the lump sum they each received in the amount of $54,000, from his company buyout. He contends that the "application of the [child support] guidelines was unjust

and inappropriate" because Mother was receiving the same amount of money each month as he was and "[Mother's] monthly payments were the result of [his] toil."

The court ordered two years' retroactive child support in the amount of $2,137.50 per month based on Father's monthly net resources of $8,550. *See* TEX. FAM. CODE ANN. §§ 154.061 (chart), 154.125(b) (child support of 25% of net resources for two children) (West Supp. 2015). The court found that Father had been intentionally unemployed, "claiming he could not work in any employment due to a 'non-compete.'" The evidence supports this finding. Father testified about the non-compete and said he could "flip burgers," but asked "would that be worthwhile?" He said his time was "better spent studying in the industry and my counselor advised me not to work." He said during that time he continued "to work towards my future and my children's future." When asked whether he could have worked toward his children's future by earning income at a job outside his chosen field and putting it in the children's education account, he said, "Not when I was already making close to 12,000 a month already."

Additionally, the record showed that prior to the final decree of divorce, Mother had primary custody of the two children and was receiving no financial assistance in the way of child support. A parent has a "'natural and moral obligation' to provide for or support his offspring." *Bailey v. Bailey*, 987 S.W.2d 206, 209 (Tex. App.—Amarillo 1999, no pet.) (quoting *Lane v. Phillips*, 6 S.W. 610, 611 (Tex. 1887)). Part of that duty is financial when the other spouse has primary custody of the children during the pendency of divorce proceedings. *See id.*

Based on our review of the record, we cannot conclude that the trial court abused its discretion by ordering Father to pay retroactive child support.

We resolve issue two against Father.

–9–

## Division of the Marital Property

In issue three, Father contends that the trial court abused its discretion in dividing the marital property. He contends that the court's division of property was "wildly disproportionate in favor of [Mother]." He argues that the trial court awarded Mother 80% of the marital property, and he argues that the evidence is legally and factually insufficient to support the division.

Upon granting a divorce, a court must divide the marital property "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (West 2006). A court has wide discretion in dividing the property; the division need not be equal, but it must be equitable. *Murff*, 615 S.W.2d at 698. Among the factors a court may consider are the nature of the property; the disparity of incomes, earning capacities, and abilities; the relative physical conditions of the parties; the parties' relative financial conditions and obligations; the disparity of ages; the size of the separate estates, if any; and the probable need for future support. *Id*. at 698–99. We presume the trial court acted within its discretion in dividing the marital property. *See id*. at 699.

In the divorce decree, Mother and Father were each awarded a vehicle and any associated debt; each ordered to manage their separate accounts related to the children's education; each awarded the tangible property in their respective possession; each awarded the life insurance policies insuring their respective lives; each awarded 50% of the remaining payments from Father's company buyout; each awarded 50% of reward points, club points, airline miles and travel awards; and each awarded 100% ownership of all real property or financial accounts the other failed to disclose.

Additionally, the decree awarded Father four financial accounts with values totaling about $68,500. The decree awarded Mother two financial accounts with a total value of around

$10,000, and two retirement accounts valued at around $195,000. The decree also awarded as separate property to Father a piano and all tangible personal property in his current possession, which would include in excess of $120,000 in life insurance benefits he received upon his father's death.

With regard to liabilities, the decree ordered Father to pay all debts incurred by him in his name only from the date of the marriage through the date of the final decree, and all debts incurred in the name of Father and Mother from the date of the marriage through August 3, 2012. The court ordered Mother to pay all debts incurred in her name only since August 3, 2012. It also ordered Mother to pay $18,000 to Father for unpaid reimbursement claims.

The values that Mother and Father gave to their community assets during their respective testimonies were inconsistent, and the final decree did not place a value on those assets awarded to the parties. Father contends that the assets awarded to Mother constituted 80% of the marital property, but the final decree does not contain values upon which we can make such a determination. But even if Father is correct, we cannot conclude that the trial court abused its discretion.

The trial court based its decision on many factors. In its findings of fact and conclusions of law, the trial court stated that it took into consideration the following factors in dividing the community property:

> the children of the marriage; the education and employability of the parties, including the disparity of earning power between the parties and the parties' respective business opportunities, education, capacities, abilities, and future employability; the amount of time during which [Mother] has been out of the work force; duration of the marriage; benefits [Mother] may have derived from the continuation of the marriage; disparity of earning power of the spouses and their ability to support themselves; conservatorship, support, and needs of the children; ages of the spouses; education and future employability of the spouses; community indebtedness and liabilities; tax consequences of the division of property; tax consequences of division of property; length of the marriage; nature of the property; earning power, business opportunity, capabilities, and abilities of the spouses; need for future support; conduct of the parties; fraud or constructive

–11–

fraud on the community; nature of the property involved in the division; attorney's fees and costs, and reimbursement.

The evidence showed that Father was not ordered to pay child support because the parties were given joint, 50/50 possession of the children, and the decree ordered Mother and Father to support the children during their respective periods of possession. The record also showed that while both Mother and Father had a college degree, Father had become very successful in his business while Mother stayed at home to rear the children. The record showed that she had difficulty obtaining a job during the divorce and took minimum-wage employment. Mother testified that when the payments from Father's company buyout come to an end in three years, she would be unable to provide the minimum reasonable needs of the children without support. The evidence showed that because of Father's experience, he had much greater earning potential than Mother. Father also had a larger separate property estate than Mother, given that he had recently received in excess of $120,000 in life insurance benefits after his father's death.

Additionally, the trial court observed the parties and their demeanor and could determine for itself any issues regarding credibility or inconsistencies in the evidence. For example, Father admitted that he did not include on his inventory a townhome that he purchased during the pendency of the divorce, but placed in the name of his mother's trust. And a witness, a friend of Father's, testified that Father told her his income would not "be physically apparent . . . until the divorce was final." The witness testified that she took this to mean that "it would not be visibly apparent how much he was making until the divorce was final."

In summary, considering the disparity of income and earning potential between Mother and Father, the disparity of their separate estates, Mother's having been out of the work force for many years, the fact Father was not ordered to pay prospective child support, and all other factors the trial court stated it factored into the division of the property, we cannot conclude that the division was so unjust and inappropriate as to constitute an abuse of discretion.

We resolve issue three against Father.

## Conclusion

We affirm the amended final decree of divorce.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

150019F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF A.E.R. AND
E.N.R., CHILDREN

No. 05-15-00019-CV

On Appeal from the 429th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 429-51128-2012.
Opinion delivered by Justice Lang-Miers.
Justices Francis and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Melissa Ann (Rubinoff) Clark recover her costs of this appeal from appellant Dani D. Rubinoff.

Judgment entered this 9th day of August, 2016.