

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00321-CV

---

**IN THE INTEREST OF JULIE ANN PRIMERA, A CHILD**

---

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 98-12-17482, Honorable Pat Phelan, Presiding

---

July 30, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Diana Gutierrez,[1] appeals from an order substituting $1,095.00 for "[s]pousal [m]aintenance [] paid in lieu of child support" from Appellee, Daniel Primera, with payments representing half of his Social Security Old Age Benefits (SSOAB). Diana raises eight issues, claiming the trial court abused its discretion by not enforcing the spousal maintenance order and by not following statutory guidelines for child support. We affirm.

---

[1] The records refer to Julie's mother as both "Diana" and "Diane." For convenience, we will refer to Julie's mother as "Diana."

**Background**

Diana and Daniel are the parents of Julie, an adult-disabled child.[2]  In 1998, Daniel and Diana divorced.  In 2014, the trial court issued an order modifying their parental relationship with Julie.  The trial court ordered "upon argument of the parties," neither party would pay child support, but Daniel would pay spousal maintenance of $1,096.55 per month in lieu of child support.  This agreement purportedly allowed Julie to qualify for greater disability benefits.  The order also provided that "[p]ayments received for the benefit of the child, including payments from the Social Security Administration . . . shall be a credit against" [Daniel's spousal maintenance] obligation."

Both parties remarried, and Diana's husband died in 2020.  In January 2022, Diana filed a Petition for Enforcement of Spousal Maintenance, claiming Daniel failed to make payments from June 15, 2021, to December 1, 2021, seeking $7,125.85 in back payments.  In March 2022, Daniel counter-petitioned, arguing that the "spousal maintenance in lieu of child support" amount now differed by 20% from the Texas child support guidelines.  He sought to terminate the spousal maintenance award due to his retirement and Julie's receiving half his SSOAB, amounting to $1,466.00 per month, subject to cost-of-living increases.

At a hearing in March 2023, Diana testified about her income and expenses, claiming a monthly shortfall.[3]  She also described the 40-hours of respite care that Julie

---

[2] The parties do not dispute that their daughter requires substantial care and personal supervision due to mental or physical disabilities and is incapable of self-support.  *See* TEX. FAM. CODE ANN. § 154.302.

[3] Diana testified that she worked 40 hours a week, both in-home and out-of-home.  When these wages are included, she no longer has a shortfall, even without adjusting for Daniel's contribution.

receives at no cost during the workweek.[4]  Diana acknowledged receiving $1,466 per month from Daniel's SSOAB benefits, which exceeded the court-ordered spousal maintenance.  During cross-examination about the alleged arrearage owed by Daniel, Diana could not recall whether she received Daniel's SSOAB benefits during this period or if it satisfied the alleged deficiency, testifying she "had been in a fog about it."[5]

Daniel testified about remarrying and his current monthly gross income of $6,253.67, which includes monthly wages of $3,081.67, SSOAB benefits of $2,528.10, and a retirement benefit of $639.  After deductions for federal withholding and FICA totaling $1,209.25, his net income is $5,044.42 per month.  He testified he stopped making payments to Diana for "spousal maintenance in lieu of child support" upon retiring because she was receiving half of his SSOAB benefits, amounting to $1,466.00 per month, which exceeded the $1,095.55 monthly payment.  Via a demonstrative exhibit, Daniel calculated that his child support obligation would be $1,008.88 under the statutory guidelines.  TEX. FAM. CODE ANN. § 154.125.  Daniel contended the payment of SSOAB benefits exceeded any child support obligations.

On June 23, 2023, the trial court signed an Order Terminating Spousal Maintenance and Order of Child Support.  The court found:

(1) Julie is an adult-disabled child,

(2) Daniel has been making support payments for Julie since June 1, 2021, without any delinquency or arrears, and

---

[4] This care includes bathing, grooming, feeding and dressing Julie.

[5] Documentary evidence presented at hearing suggests Diana received part of Daniel's SSOAB benefits during the relevant period.  Due to a cost-of-living increase in 2022, the amount increased from $1,290.30 to $1,466.00 per month.

(3) according to section 154.133 of the Texas Family Code, the amount of child support calculated from Daniel's net resources is less than the benefits Julie receives from Daniel's SSOAB.

The court terminated Daniel's payment obligation under the 2014 Order and ordered him to pay zero dollars per month in child support as long as Julie receives half of his SSOAB, which amounts to $1,466.00 per month—more than required by the statutory guidelines.

## Analysis

On appeal, Diana raises eight issues:

Issues 1–3, arguing the trial court erred by not finding that Daniel failed to make spousal maintenance payments in 2021.

Issues 4–5, arguing the court erred by "modifying" Daniel's spousal maintenance obligation starting June 1, 2021.

Issue 6, arguing the court abused its discretion by modifying or terminating Daniel's spousal maintenance payments while she continued to satisfy eligibility criteria.

Issues 7–8, arguing the court's child support order failed to make necessary findings under sections 154.130 and 154.306 of the Texas Family Code.

We disagree with Diana for the reasons discussed below in each section.

Preliminary Considerations

As a preliminary matter, we note that Diana's issues are premised on an interpretation of the 2014 order that characterizes the language "spousal maintenance . . . in lieu of child support" as "spousal maintenance" only, ignoring the qualifier "in lieu of child support."  Daniel interprets the phrase to mean that payments effectively constitute "child support" by another name.  We examine the order's language to determine if the phrase is ambiguous.  *See Jones v. Morales*, 318 S.W.3d 419, 422 (Tex. App.—Amarillo

2010, pet. denied) (an appellate court may consider on its own motion whether a court order is ambiguous).

Court orders are interpreted like other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1991). The legal effect of a court order is reviewed de novo. *Kim v. Ramos*, 632 S.W.3d 258, 265 (Tex. App.—Houston [1st Dist.] 2021, no pet.). We interpret the order "as a whole toward the end of harmonizing and giving effect to all the court has written." *Point Lookout W. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (per curiam). Because the 2014 order refers to "spousal maintenance in lieu of child support" and "spousal maintenance"[6] separately, we interpret the former phrase to have a different meaning from "spousal maintenance." Limiting the interpretation to Diana's literal view of "spousal maintenance" disregards the qualifying language in the "Child Support" section, which states spousal maintenance is ordered "in lieu of child support" based on the parties' agreement.[7] Interpreting "spousal maintenance in lieu of child support" in this case as synonymous with child support ensures that every word in the phrase has meaning. Conversely, ignoring the qualifying language would render the reference to child support superfluous and be contrary to the parties' represented agreement. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 754 (Tex. 2020) (courts must afford some consequence to each part of an instrument so that no provisions are rendered meaningless).

---

[6] Diana also testified about a monthly spousal support obligation of $300, which she claims Daniel failed to pay.

[7] "In harmonizing [a document's] provisions, terms stated earlier in an agreement must be favored over subsequent terms." *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 558 n.89 (Tex. 2023) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

5

This interpretation is also supported by the evidence presented in the hearing. For example, Diana agreed that the parties labeled the payments as spousal maintenance to ensure Julie received additional benefits. Diana agreed that the payments, though labeled as spousal maintenance, were essentially child support.[8] Daniel likewise testified the parties selected the term "spousal maintenance" to increase Julie's SSI benefits; the only reason was "to help my daughter." While spousal maintenance is meant to "provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support,"[9] the evidence shows that the parties intended for payments to directly benefit Julie, their daughter.[10] We hold that, viewing the court's order as a whole in light of the evidence in the record, the phrase "[s]pousal [m]aintenance [] paid in lieu of child support" was used as a substitute for "child support" to enable Daniel and Diana to obtain greater third-party benefits for their disabled child. With this in mind, we turn to Diana's issues.

Issues One through Six

Diana's first six issues are based on an interpretation of the 2014 order that is contrary to our own—that "spousal maintenance" is an unqualified term and unrelated to

---

[8] When asked whether, even though the parties "are calling it spousal maintenance, at the end of the day it's child support, correct?" Julie replied, "Yeah. Yes, sir, I guess it's the way it's worded." She later again confirmed that the money "was really treated just as—just like child support," replying, "Yes, I would say so."

[9] *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.).

[10] We have previously recognized that the purpose of child support is to fulfill a parent's "natural and moral obligation" to provide for and support their offspring. *Bailey v. Bailey*, 987 S.W.2d 206, 208 (Tex. App.—Amarillo 1999, no pet.) (*quoting Lane v. Phillips*, 69 Tex. 240, 243, 6 S.W. 610, 611 (1887)).

"child support."  This interpretation ignores the qualifying language in the order, the parties' agreement at that time, their testimony at trial, and the trial court's order. Accordingly, Diana's issues one through six are overruled.

Issue Seven

In her seventh issue, Diana argues that the trial court abused its discretion in its child support award by deviating from the statutory guidelines and failing to make findings under sections 154.130 or 154.133 of the Texas Family Code.  We disagree.

We review the court's child support order for abused discretion.  *In re Marriage of Tuttle*, 602 S.W.3d 9, 14 (Tex. App.—Amarillo 2020, no pet.).  A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without any reference to guiding rules and principles.  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).  *See In re J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021).  We review the evidence in the light most favorable to the trial court's decision and presume the judgment is correct.  *In re K.M.B.*, 606 S.W.3d at 894.

The Texas Family Code provides guidelines intended to determine an equitable amount of child support and are presumed to be in the child's best interest.  *In re Marriage of Featherston*, 675 S.W.3d 330, 334 (Tex. App.—Amarillo 2023, no pet.).  *See* TEX. FAM. CODE ANN. §§ 154.121, .122.  The trial court applied section 154.333, which adjusts the child support guidelines for an obligor receiving SSOAB.  That statute requires the court to determine the amount of child support under the guidelines and subtract "the amount of benefits or the value of the benefits paid to or for the child as a result of the obligor's receipt of social security benefits."  *Id.*

7

Diana testified that she received $1,466 per month in SSOAB benefits from Daniel. Using a demonstrative exhibit, Daniel showed how his net monthly income of $5,044.42, multiplied by 20%, resulted in a child support obligation of $1,008.88, which is $457.12 less than the SSOAB benefits received. *See* TEX. FAM. CODE ANN. § 154.125(a), (b). Thus, the trial court's child support award exceeds the statutory guidelines.

If Diana intends to assert the trial court deviated from the amount of child support that would have been ordered if statutory guidelines were applied, she does not explain how. Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). *See Dunlap v. Excel Corp.*, 30 S.W.3d 427, 434 (Tex. App.—Amarillo 2000, no pet.) (holding that substantive analysis and citation to authority must accompany an issue to avoid waiver). We overrule Diana's seventh issue.

Issue Eight

In her eighth issue, Diana claims the trial court did not adequately consider the factors for determining child support after a child's eighteenth birthday. *See* TEX. FAM. CODE ANN. § 154.306. The Texas Family Code requires the court to consider several factors when determining child support for an adult child, including:

> (1) any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;
>
> (2) whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial supervision of the adult child;

8

(3) the financial resources available to both parents for the support, care, and supervision of the adult child; and

(4) any other financial resources or other resources or programs available for support, care, and supervision of the adult child.

TEX. FAM. CODE ANN. § 154.306. Although a court must consider these factors, they are not exclusive. *In re J.M.W.*, 470 S.W.3d 544, 553–54 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Diana did not request findings of fact and conclusions of law from the trial court. When no findings are requested or filed, we presume the court made the necessary findings to support its judgment. *In re Marriage of Gonzalez*, No. 07-05-0205-CV, 2006 Tex. App. LEXIS 9538, at *7 (Tex. App.—Amarillo Nov. 2, 2006, no pet.). Additionally, Diana did not complain at trial about the court's determinations, so she did not preserve this issue for review.

Even if the issue were preserved, we would not hold the trial court abused its discretion. A trial court does not abuse its discretion as long as there is some substantive and probative evidence supporting its decision. *Ban v. Krause*, 674 S.W.3d 564, 573 (Tex. App.—Houston [1st Dist.] 2023, no pet.). The court is also not required to accept a particular parent's interpretation of the evidence and is free to resolve evidentiary conflicts and make credibility choices. *In re C.R.D.*, No. 07-22-00081-CV, 2022 Tex. App. LEXIS 6773, at *6 (Tex. App.—Amarillo Sept. 2, 2022, no pet.) (mem. op.).

Based on our review, the record contains conflicting information about the extent of Julie's condition and the funds necessary for her care. The evidence addresses all of

9

the section 154.306 criteria.  Therefore, we cannot say the trial court abused its discretion in assessing the current child support award.  We overrule Diana's eighth issue.

## Conclusion

Having overruled all of Appellant's issues, we affirm the trial court's order.


Lawrence M. Doss
Justice